# EXHIBIT A

E-FILED
3/28/2022 2:02 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV396251
Reviewed By: R. Walker

1  **COHELAN KHOURY & SINGER**
2  Timothy D. Cohelan (SBN 60827)
   *tcohelan@ckslaw.com*
3  Isam C. Khoury (SBN 58759)
   *ikhoury@ckslaw.com*
4  J. Jason Hill (SBN 179630)
   *jhill@ckslaw.com*
5  605 "C" Street, Suite 200
   San Diego, CA 92101
6  Tel: (619) 595-3001/Fax: (619) 595-3000

7  [Additional attorneys listed on signature page]

8  Attorneys for Plaintiff and all others similarly situated

9            **SUPERIOR COURT OF CALIFORNIA**

10              **COUNTY OF SANTA CLARA**

11  SHAWN LYNCH, on behalf of himself and    ) Case No. 22CV396251
    all other persons similarly situated,     )
12                                            ) **CLASS ACTION COMPLAINT FOR**
                                              ) **DAMAGES, RESTITUTION AND**
13          Plaintiff,                        ) **INJUNCTIVE/DECLARATORY RELIEF**
                                              )
14          v.                                ) **1. VIOLATIONS OF THE DISCLOSURE**
                                              )    **AND ADVERTISING**
15  MATTERPORT, INC., a Delaware              )    **REQUIREMENTS OF BUSINESS**
    corporation; RJ PITTMAN, DAVE             )    **OPPORTUNITY LAWS AND SELLER**
16  GAUSEBECK, MATT BELL, CARLOS              )    **ASSISTED MARKETING PLAN**
    KOKRON, PETER HEBERT, JASON               )    **LAWS;**
17  KRIKORIAN, and MIKE GUSTAFSON,            )
                                              ) **2. VIOLATIONS OF CALIFORNIA'S**
18          Defendants.                       )    **SELLER-ASSISTED MARKETING**
                                              )    **PLAN ACT [Cal. Civil Code §§**
19                                            )    **1812.200, *et seq.*] (in the alternative to**
                                              )    **Count I);**
20                                            )
                                              ) **3. VIOLATIONS OF CALIFORNIA'S**
21                                            )    **UNFAIR COMPETITION LAW**
                                              )    **("UCL") [Cal. Business & Professions**
22                                            )    **Code §§ 17200-17208, *et seq.*];**
                                              )
23                                            ) **4. VIOLATIONS OF CALIFORNIA'S**
                                              )    **FALSE ADVERTISING LAW ("FAL")**
24                                            )    **[Cal. Business & Professions Code §§**
                                              )    **17500, *et seq.*];**
25                                            )
                                              ) **5. BREACH OF THE IMPLIED**
26                                            )    **COVENANT OF GOOD FAITH AND**
                                              )    **FAIR DEALING;**
27                                            )
                                              ) **6. INJUNCTIVE RELIEF.**
28                                            ) **DEMAND FOR JURY TRIAL**

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Plaintiff **SHAWN LYNCH**, on behalf of himself and all others similarly situated ("Plaintiff"), hereby complains and alleges as follows based on investigation, information, and belief:

## INTRODUCTION AND GENERAL ALLEGATIONS

1.     This class action lawsuit involves the false enticement of a lucrative business opportunity presented by MATTERPORT, INC, a Delaware corporation, ("Matterport"), along with its business directors, RJ PITTMAN, DAVE GAUSEBECK, MATT BELL, CARLOS KOKRON, PETER HEBERT, JASON KRIKORIAN, and MIKE GUSTAFSON, (collectively, "Defendants") who each engage in the advertising and sale of "seller assisted marketing plans," also referred to under certain state laws as "business opportunities," relating to the sale of Matterport 3D cameras and associated services.

2.     Defendants sell 3D cameras and advertise the lucrative business opportunity associated with the allegedly burgeoning industry of 3D camera services. Matterport advertised the Matterport Service Partner ("MSP") program as a "global network of immersive media professionals looking to build their own Matterport business."

3.     To induce purchasers and create demand for their 3D cameras, Defendants' sales representatives represent to potential buyers and the public that buyers will receive marketing materials and filtered leads in their geographic location that will pay for the initial investment in the Matterport 3D camera in six months. For example, Defendants promise "Pre-qualified local leads seeking 3D scanning services is a benefit of our MSP program. We match Matterport Service Partners on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell MATTERPORT on your own and generate business too!"

4.     Defendants' representations are false. In reality, it is exceedingly difficult for 3D camera purchasers to realize a profit because the market for providing 3D scanning is saturated and the leads for new business are few. Had Plaintiff known that the alleged lucrative 3D camera business was not profitable, he would not have purchased Defendants' 3D cameras.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

5.      Furthermore, while Defendants have engaged in business as sellers of assisted marketing plans for several years, at no time did Defendants comply with the statutory requirements of twenty-two jurisdictions, including but not limited to, as required by California Civil Code §§ 1812.200, *et seq*., known as the Seller Assisted Marketing Plan Act ("SAMP Act").[1]

6.      Plaintiff, on behalf of himself and the Multi-State Class defined below, brings this action pursuant to the laws of jurisdictions that (1) prescribe specific disclosures be provided by sellers of business opportunities to purchasers prior to executing sales contracts, (2) require filings be submitted by sellers of business opportunities to an authoritative body of the state, and (3) prohibit the making of misrepresentations and omitting material facts in connection with the offer or sale of a business opportunity to obtain remedies for Defendants' unlawful conduct concerning the business opportunity of 3D camera services to Plaintiff and members of the Multi-State Class.

7.      In addition, Plaintiff, on behalf of himself and the Classes defined below, brings this action pursuant to California's SAMP Act, Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq*., California's False Advertising Law ("FAL"), Business & Professions Code §§ 17500, *et seq*., and the Implied Covenant of Good Faith and Fair Dealing to obtain remedies for Defendants' unlawful, fraudulent, and unfair conduct in failing to comply with regulations governing sales of business opportunities and making misrepresentations and omitting material facts concerning the business opportunity of 3D camera services to Plaintiff and Class members and that Matterport would be competing with Plaintiff and Class members. Plaintiff also seeks injunctive relief to enjoin Matterport from continuing to operate its Capture Services program and compete with Plaintiff and Class members.

8.      Defendants never provided required disclosures, did not comply with registration requirements, engaged in deceptive, unlawful, and unfair trade practices, did not honor any

---

[1] The twenty-two jurisdictions with statutes specifically regulating, *inter alia*, seller assisted marketing plans or business opportunities for which a private right of action may be brought on behalf of a class are: Alaska, California, Connecticut, Florida, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington D.C.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

geographic limitations, saturated ill-defined and non-lucrative markets, and competed with Plaintiff and Class members by selling cameras and scanning services to Plaintiff's and Class members' leads and customers.

9.      "Lion" was a pilot program that Matterport launched in San Francisco in July 2017, as Matterport was going to get into the scanning business. "Lion" was the precursor to the Capture Services program that was announced in the Spring 2020. Matterport quickly announced it was withdrawing the pilot program due to backlash from MSPs complaining that Matterport would be directly competing with them if the "lion" program continued.

10.     However, despite this conflict of interest, Matterport continued to do the "lion" program surreptitiously while Matterport continued to enroll people into the MSP program, but Matterport was not telling the prospective MSPs about it when Matterport was enrolling them into the MSP program.

11.     After Capture Services was announced in Spring 2020, numerous MSPs complained that instead of helping them grow their business as Matterport promised, Matterport developed the Capture Services program and was competing against them. MSPs complained that they lost customers who hired Matterport Capture Services technicians instead of the MSPs.

12.     As a result of Defendants' wrongful conduct, Plaintiff and the other Class members who pursued Matterport's business opportunity are entitled to actual and statutory damages, rescission, injunctive, and declaratory relief, plus reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

13.     The California Superior Court has jurisdiction in this matter due to Defendants' violations of Business and Professions Code §§ 17200, *et seq*., Business and Professions Code §§ 17500, *et seq*., and related common law principles.

14.     Venue is proper in this Judicial district and the County of Santa Clara because, upon information and belief, Defendants reside in, are located in, and/or are domiciled in this county and maintain offices and transact business in this county, and contracts were entered into by Plaintiff and members of the Classes that selected the County of Santa Clara, California as the forum in which lawsuits must be brought. Venue is also proper in Santa Clara County pursuant to

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  California Code of Civil Procedure §§ 395(b) and 395.5 in that this county is the place where the

2  harm occurred. Further, the unlawful acts and business practices alleged herein have a direct effect

3  on Plaintiff, and those similarly situated, within the State of California and within Santa Clara

4  County, as well as other counties located in California, and are directed and controlled from

5  Defendants' corporate headquarters located in Sunnyvale, California. Lastly, the contracts and

6  terms of use governing the relationship between Plaintiff and Defendants provide for lawsuits to be

7  commenced in courts located in Santa Clara County, California.

8        15.    On information and belief, the California Superior Court has primary and original

9  jurisdiction in this matter because there is no federal question at issue, as the issues herein are

10 based, in part, on California statutes and law, including the California Civil Code, California Code

11 of Civil Procedure, applicable California Rules of Court, and the applicable provisions of the

12 Business and Professions Code.

## THE PARTIES

### Plaintiff

15      16.    At all times relevant, Shawn Lynch ("Lynch") was and is a natural person over the

16 age of eighteen, residing in Washington D.C. and Reston, Virginia.

### Defendants

18      17.    Matterport is a Delaware corporation with its headquarters and principal place of

19 business located at 352 E. Java Drive, Sunnyvale, California 94089. Matterport is engaged in

20 business throughout California and engages in soliciting contracts for seller assisted marketing

21 plans related to its 3D camera products and associated services through what is referred to by the

22 company as the MSP program.

23      18.    At all relevant times, RJ Pittman ("Pittman") was the Chief Executive Officer of

24 Matterport and is on the Board of Directors. Pittman is the principal executive officer, a director

25 of Matterport, and directly or indirectly controls Matterport.

26      19.    At all relevant times, Dave Gausebeck ("Gausebeck") was the Chief Technology

27 Officer of Matterport and on the Board of Directors. Gausebeck is a director of Matterport and

28 directly or indirectly controls Matterport.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

20.     At all relevant times, Matt Bell ("Bell") was the co-founder, advisor, and a member of the Board of Directors of Matterport. Bell directly or indirectly controls Matterport.

21.     At all relevant times, Carlos Kokron ("Kokron") was a member of the Board of Directors of Matterport. Kokron directly or indirectly controls Matterport.

22.     At all relevant times, Peter Hebert ("Hebert") was a member of the Board of Directors of Matterport. Hebert directly or indirectly controls Matterport.

23.     At all relevant times, Jason Krikorian ("Krikorian") was a member of the Board of Directors of Matterport. Krikorian directly or indirectly controls Matterport.

24.     At all relevant times, Mike Gustafson ("Gustafson") was on the Board of Directors of Matterport. Gustafson directly or indirectly controls Matterport.

25.     Plaintiff are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of and/or in concert with the other Defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Plaintiff are informed and believe that all Defendants are to be jointly and severally liable for the unlawful acts as described herein. Further, Plaintiff are informed and believe, and based thereupon allege, that Defendants, and each of them, each had knowledge and information sufficient to them to have authorized, ratified, and directed the acts of one another as their conduct relates to Defendants' uniform practices and treatment of the proposed Class members.

26.     The role of Matterport's board of directors is to review and evaluate the strategies and plans for the company, and in order to do that, the directors need to understand to some level of detail the company's goals, objectives, and focus. The individual Defendants routinely discussed Matterport sales and marketing programs and strategies, camera and Cloud Services revenue, sales goals, and forecasts, Matterport's partnerships and customer programs, and evolving the company business model from hardware to a pure Cloud Services model, and they reviewed presentations on those topics during the board of directors meetings. The topics of some of the presentations to the directors included (a) Matterport marketing efforts, and sales representatives' camera sales data; (b) the company's organizational focus and entry into new

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

markets; and (c) leads.

27.    The board of directors discussed Matterport's business development progress and vision, and plans for future expansion. Initially, Matterport's board of directors put pressure on the sales team to meet revenue goals via camera sales. The board of directors discussed the launch of the MSP program, which was intended to grow camera sales and, as time went on, the growth of the MSP network. However, as time further progressed, the directors discussed how the MSP program is not scalable and does not generate much profit for Matterport, how the MSP model conflicts with Matterport's interests, and evolving the company business model from hardware to pure SaaS (*i.e.*, Capture Services).

28.    The directors discussed pilot programs that were the precursor to Matterport Capture Services, and discussed the development of the Capture Services program.

29.    The directors were aware of complaints from MSPs about not getting any prequalified leads, MSPs not making their return on investment, and Matterport competing against MSPs by selling cameras to MSPs' customers and, eventually, competing for scanning services through the Capture Services program. Despite all of this, the directors (*i.e.,* individual Defendants) deliberately continued to engage in the deceptive conduct complained of herein.

## FACTUAL ALLEGATIONS

30.    Matterport sells 3D cameras that create 3D models of real-world places, which have many potential applications, including in connection with real estate sales. Matterport advertises, promotes, and sells 3D cameras to the public. Through its advertisements, promotional materials, in-person and telephonic solicitations, and websites, Matterport offers a business opportunity to its 3D camera purchasers, including providing filtered leads and additional support and services. Matterport refers to 3D camera purchasers and purchasers of its services and support as "MSPs", or Matterport Service Partners. Matterport's had "Program Overview", "Benefits", "FAQs", and "Apply Today" webpages that were in use on Matterport's website from the start of the MSP program on August 14, 2015 until Matterport stopped accepting new applications into the MSP program on November 27, 2019.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

31.     Matterport provided false statements on its website in connection with its 3D camera sales. These misrepresentations were uniform, as they were listed on the MSP program webpages on Matterport's website, in sales presentations given by Matterport sales representatives, and on other Matterport marketing materials. Matterport's marketing team would re-use the same information in its various marketing materials.

32.     Matterport made misrepresentations such as "Pre-qualified local leads seeking 3D scanning services is a benefit of our MSP program. We match Matterport Service Partners on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell Matterport on your own and generate business too!"

33.     Matterport gave its sales representatives written, uniform talking points and flowcharts for all of the sales representatives to use when talking to prospective customers to sell Matterport's products and services, including when touting the benefits of the MSP program, and they would convey that standard text to prospective customers.

34.     Matterport's inside sales representatives represent to potential buyers that MSPs receive marketing materials and "filtered leads" in their geographic 3-30 mile location that would pay for the initial investment in the Matterport 3D camera in "six months." On information, investigation, and belief, the same misrepresentations were part of a standard script that was communicated by Matterport to hundreds, if not thousands, of individual purchasers to induce potential buyers to purchase a high-priced 3D camera and pay for associated support and services.

35.     Through Matterport's sales pitches, solicitations, advertisements, and promotional materials, consumers are enticed to purchase a piece of equipment for which they have very little personal use by the promise of a for-profit, cannot-lose business opportunity in what Defendants claim is a nascent, but exponentially growing, industry.

36.     Matterport's website, formerly located at https://www.matterport.com/matterport-service-partner-network/benefits, stated "YOUR BUSINESS, YOUR WAY" and "Be your own boss, set your own hours, and earn what you want. For only $4,100* in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business."

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

37.    Defendants' representations are false, deceptive, and likely to mislead a reasonable consumer. Additionally, Defendants omitted material facts as more fully set forth below.

38.    Matterport's 3D camera and supporting services constitute a "closed system," meaning that all of it is proprietary. Every scan done by Matterport's 3D cameras requires Matterport's proprietary software, technical support, maintenance, and server-space services provided only by Matterport.

39.    In addition to the sale of the 3D camera itself, Matterport requires that its MSPs scan and upload images to its computer systems, and pay cloud service storage fees and software fees from the 3D cameras. After a handful of such uploads, Matterport declares that the "purchaser" is a "partner" and promises geographic limitations and in-bound lead sales calls.

40.    Matterport designs its 3D cameras to require constant software updates. The cameras save files (scanned images) in a format that is unreadable unless the 3D camera buyer also purchases a plan with Matterport software, support services, and cloud member services.

41.    If Plaintiff and Class members do not pay the monthly fee for Matterport's Cloud Service Plan, the 3D camera equipment they purchased is rendered entirely useless, as it cannot be used without the mandatory "tied" services, software, and cloud storage that are included in Matterport's Cloud Service Plan.  Plaintiff and Class members would also lose all access to the images they previously scanned and the 3D models they already created. Matterport would retain them, however.

42.    Furthermore, Matterport saturated Plaintiff's and Class members' local areas with other purchasers to whom Matterport also promised filtered leads, but Defendants failed to inform Plaintiff or Class members of this material fact. As a result, Plaintiff has not been able to profit as promised from Matterport's supposed "lucrative" business opportunity. Upon investigation, information, and belief, this is also true for the members of the Classes, defined below.

43.    Defendants also made material misrepresentations in their marketing and promotional activities that Matterport's 3D cameras, 3D scanning, and equipment are easy to use, when they were not. For example, Matterport represented that "Matterport scanning is easy

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   to learn in minutes" and "easy for anyone to get started, fast." Additionally, Matterport

2   misrepresented that it would provide MSPs with training and resources, but Matterport provided

3   little to no technical support. Thus, in addition to the huge costs for the scanner and business

4   start-up costs, Defendants failed to disclose the amount of technical expertise necessary to

5   actually perform viable and usable scans, and failed to disclose that Defendants' technical

6   support team services nationwide were essentially in the hands of one or two people. The result

7   was that MSPs, like Plaintiff, who relied on the need for technical support were denied such

8   access and relegated to actually serving as a peer-to-peer technical support team.

9          44.    Plaintiff and Class members detrimentally relied on Defendants' representation

10  that substantive technical support would be provided, and had Defendants disclosed the true facts

11  about their nascent technical support "team" and the fact that the business start-up costs would

12  include hundreds of hours of time just to be able to use the technology in order to be paid for

13  scanner services, a reasonable person would have walked away from Matterport's MSP program

14  and camera and cloud services purchases.  Instead, MSPs and participants served as their own

15  technical support and were performing quality assurance functions that were otherwise promised

16  to be provided by Matterport, but were not.

17         45.    At all relevant times, Defendants failed to disclose that the MSP program could be

18  abandoned and the investment in the camera and the MSP program would be lost.

19         46.    At all relevant times, Defendants failed to disclose that they were actually setting

20  up their own scanning network where they set the price, and actually become a direct competitor

21  for scanning business against the camera purchaser and/or MSPs.  Specifically, after an MSP

22  built a Matterport-based website for their business opportunity, participants in the program were,

23  in effect, just free marketers and promoters of the Matterport equipment and required cloud

24  service arrangements. Despite publicly announcing the withdrawal of a pilot program, Matterport

25  surreptitiously continued to operate the program as part of a business model designed to compete

26  against MSPs. Matterport surreptitiously continued to develop the Capture Services program

27  after publicly announcing that it had withdrawn the program.

28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

47.     Matterport failed to disclose that it would be using the data generated by MSPs to then enter their local geographic markets and offer to provide scans at a fraction of the cost that would otherwise be borne by MSPs, thereby cannibalizing the market and harming MSPs' ability to earn money from their Matterport scanning business.  Thus, not only did Matterport fail to ever deliver on vetted leads or prospective leads, by entering the market and undermining the cost or service fees of their MSPs, Matterport undercut the ability of MSPs to market scanning services in their communities. Defendants' actions to enter local markets, failure to provide the promised business leads, and lack of technical support, basically renders the MSP program worthless, and actually invites MSP clients to seek out Matterport directly since Matterport has access to this information through the program.

48.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Classes have suffered damages.

### Matterport's Sales of 3D Cameras Offered a Business Opportunity Subject to Disclosure Requirements of Twenty-Two Jurisdictions

49.     Twenty-two jurisdictions impose disclosure requirements on persons or companies, such as Defendants, seeking to offer "business opportunities" or "seller assisted marketing plans." These laws apply to promises or offers to engage in a money making enterprise conditioned on the purchase of the seller's goods, equipment, supplies, or services.

50.     As one example, the California Legislature passed the SAMP Act based on a series of predatory marketers of products/services with all strings attached seeking consumers and purchasers who are not savvy to the potential "lucrative" market for products and services located in already saturated geographic market areas. One wave of this activity was to sell "vending machines" for large up-front costs and then service fees to keep the equipment running and another wave of "envelope stuffers" to "assist" in the marketing and placement of said equipment. "The initial payment is usually in the form of a purchase of overpriced equipment or products" and thereafter requires additional monies in order to stay invested in a losing proposition. Hence, the legislative intent behind the SAMP Act was "to provide each prospective seller assisted marketing plan purchaser with the information necessary to make an intelligent decision regarding seller

assisted marketing plans being offered; to safeguard the public against deceit and financial hardship; to insure, foster and encourage competition and fair dealing in the sale of seller assisted marketing plans by requiring adequate disclosure; to prohibit representations that tend to mislead; and to prohibit or restrict unfair contract terms. *This title shall be construed liberally in order to achieve the foregoing purposes.*" *See* Cal. Civ. Code § 1812.200(b) [emphasis added].

51.    A "seller assisted marketing plan" is defined by California Civil Code § 1812.201 as any sale or lease or offer to sell or lease any product, equipment, supplies, or services within a certain price range that will aid a purchaser or will be used by or on behalf of the purchaser in connection with or incidental to beginning, maintaining, or operating a business when the seller assisted marketing plan seller has advertised or in any other manner solicited the purchase or lease of the seller assisted marketing plan and done any of the following acts:

> (1) Represented that the purchaser will earn, is likely to earn, or can earn an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan.

> (2) Represented that there is a market for the product, equipment, supplies, or services, or any product marketed by the user of the product, equipment, supplies, or services sold or leased or offered for sale or lease to the purchaser by the seller, or anything, be it tangible or intangible, made, produced, fabricated, grown, bred, modified, or developed by the purchaser using, in whole or in part, the product, supplies, equipment, or services that were sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller.

> Cal. Civ. Code § 1812.201.

52.    California requires sellers of seller assisted marketing plans to register with the Office of the Attorney General, and sets forth disclosure requirements to prospective customers. Cal. Civ. Code §§ 1812.203, 1812.205.

53.    Twenty-one other jurisdictions have substantially similar or identical disclosure and registration requirements for sellers of business opportunities. They are Alaska, Connecticut, Florida, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington D.C.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

*Allegations Specific to Shawn Lynch*

54.    Lynch reasonably relied on Defendants' misrepresentations and omissions and purchased a Matterport 3D camera and associated services. In or around March 2018, Lynch responded to a solicitation and advertisement for a "business opportunity" relating to the use of 3D camera imaging from multiple solicitations from Defendants. Defendants provided false statements such as "Pre-qualified local lead seeking 3D scanning services is a benefit of our MSP ("Matterport Service Partners") program."; "We match MSPs on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell Matterport on your own and generate business too!" Lynch relied on these representations and entered into a "seller assisted marketing plan" contract with Defendants.

55.    After reviewing Matterport's misrepresentations on the MSP pages on Matterport's website and hearing the misrepresentations from Matterport sales representatives, Lynch purchased a Matterport Pro2 3D camera on March 28, 2018, based on Matterport's misrepresentations and omissions.

56.    In order to utilize the 3D camera, Lynch was required to become an MSP and pay an annual access fee for cloud services and software support in the amount of $499.00 per year as part of the MSP program. Lynch never received any of the disclosures required by the SAMP Act.

57.    Lynch has been an MSP since April 25, 2018. Lynch learned about the MSP program from the Matterport sales representatives and the MSP program pages on Matterport's website, and he enrolled in the MSP program by filling out an online form on Matterport's website.

58.    Lynch invested his time in learning to use Defendants' hardware equipment and software and starting, promoting, and maintaining his MSP business. Lynch also incurred out-of-pocket costs related to starting, promoting, and maintaining his MSP business, including purchasing the 3D camera, an iPad, a tripod mount, website development fees, and the annual access fee for Cloud services.

59.    Before Lynch applied to the MSP program, Matterport's website represented that

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Matterport would provide MSPs with pre-qualified local leads seeking 3D scanning services. Lynch relied on that representation in deciding to become an MSP. However, after Lynch became an MSP, he received very few "leads," and they were mostly other MSPs fishing for information.

60.    It was only after Lynch purchased the 3D camera and associated services that Lynch learned that the "filtered leads" were simply mass emails to the same geographic location for many of the persons promised "lucrative business opportunities." Then it was a race to the bottom on efforts to actually provide the 3D scanning services.

61.    Lynch's purchase of a Matterport 3D camera only resulted in a few leads, and several of the purported "leads" were actually competitors fishing for information. 3D imaging services were already a saturated market, all with the same or similar equipment and same or similar promises.

62.    Lynch's understanding of the benefits of the MSP program was that Matterport would assist MSPs, not directly compete with MSPs for scanning clients.

63.    Lynch provides scanning services in Virginia, Maryland, the Washington D.C. area, New York, New Jersey, and Connecticut.

64.    As business picked up, Lynch purchased a second Matterport Pro 2 camera. However, because Matterport has been competing with Lynch, Lynch has only been using one of the cameras.

65.    One of Lynch's regular clients has been Cushman & Wakefield. This client provided approximately 26% of his company's revenue for 2021.

66.    In January 2022, Cushman & Wakefield notified Lynch that they signed up with Matterport Capture Services and would no longer need his services. Lynch lost business as a direct result of Matterport competing against him with its Capture Services program.

67.    As a result of the aforementioned conduct, Lynch seeks damages and restitution on behalf of himself and the Classes defined below, as against all Defendants, in an amount according to proof, including his out-of-pocket costs and his lost profits. Additionally, Lynch seeks injunctive and/or declaratory relief on behalf of himself and the Classes defined below, as against

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

all Defendants, to enjoin Defendants from operating the Matterport Capture Services program and compete against Lynch and Class members.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings Count I (Violation of SAMP Act and cognate laws of other jurisdictions) on behalf of himself and all other similarly situated persons as a class action pursuant to California Code of Civil Procedure § 382. The Class that Plaintiff seeks to represent is composed of and defined as follows (the "Multi-State Class"):

> All persons who, within the applicable statute of limitations, became a Matterport Service Partner ("MSP") in one of the following jurisdictions: Alaska, California, Connecticut, Florida, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington D.C.

Excluded from the Multi-State Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Multi-State Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

69.     In addition, Plaintiff bring Counts II–V on behalf of himself and all other similarly-situated persons as a class action pursuant to California Code of Civil Procedure § 382. The class which Plaintiff seek to represent is composed of and defined as follows (the "National Class"):

> All persons in the United States who, within the applicable statute of limitations, applied online through Matterport's website and became a Matterport Service Partner ("MSP"), and incurred expenses to operate their MSP business.

Excluded from the National Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the National Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 14 -

70.     In addition, Plaintiff bring Count VI on behalf of himself and all other similarly-situated persons as a class action pursuant to California Code of Civil Procedure § 382. The class which Plaintiff seek to represent is composed of and defined as follows (the "Injunctive Relief Class"):

> All persons in the United States who, within the applicable statute of limitations, applied online through Matterport's website and became a Matterport Service Partner ("MSP").

Excluded from the Injunctive Relief Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Injunctive Relief Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

71.     Plaintiff reserves the right under California Rules of Court, Rule 3.765(b) to amend or modify the Multi-State Class, the National Class, and the Injunctive Relief Class (collectively, the "Classes") to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues.

72.     This action is brought and may be maintained as a class action pursuant to Code of Civil Procedure section 382 because there is a well-defined common interest of many persons and it is impractical to bring them all before the court.

73.     **Ascertainable Class**: The proposed Classes are ascertainable in that their members can be identified by Defendants' corporate sales and service records for sales of 3D cameras and the MSP program.

74.     **Numerosity**: The potential quantity of members of the Classes as defined is believed to be 2,377, persons and is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court.

75.     **Typicality**: Plaintiff' claims are typical of the claims of all members of the Classes because all members of the Classes suffered similar injuries, losses, are owed restitution and/or pecuniary economic damages arising out of Defendants' common course of conduct in violation of

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

law, and the injuries and damages of all members of the Classes were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

76.   **Adequacy**: Plaintiff is an adequate representative of the Classes, will fairly protect the interests of the members of the Classes, has no interests antagonistic to the members of the Classes, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating class actions and whose attorneys have nearly 100 years of combined experience in handling class action procedures and class action trials.

77.   **Superiority**: The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein, as follows:

   a.   This case involves a large corporate Defendant and a sufficient numerous group of Class members with many relatively small claims and common issues of law and fact;

   b.   If each individual member of the Classes were required to file an individual lawsuit, the large corporate Defendant would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Classes with Defendants' superior financial and legal resources;

   c.   Proof of a common business practice or factual pattern, of which the members of the Classes experienced, is representative of the Classes herein and will establish the right of each of the members of the Classes to recover on the causes of action alleged herein;

   d.   The prosecution of separate actions by the individual members of the Classes, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Classes against Defendants; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

determinations with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interest of the other members of the Classes who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Classes to protect their interests;

e.   The claims of the individual members of the Classes are not sufficiently large enough to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto without aggregation of claims and losses attributed to Defendants' illegal and deceptive conduct;

f.   Furthermore, as the damages suffered by each individual member of the Classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g.   The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

78.    **Existence and Predominance of Common Questions of Fact and Law**: There are common questions of law and fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes including, without limitation:

a.   Whether Defendants' sale of 3D cameras and associated services through Defendants' MSP program constituted a "seller assisted marketing plan" and "sale of business opportunity," such that disclosure was required by the laws of twenty-two jurisdictions, as alleged herein;

b.   Whether Defendants failed to provide the required disclosures to potential purchasers, as alleged herein;

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

c.   Whether Defendants engaged in false and misleading advertising when advertising and soliciting business for the purchase of Defendants' equipment and services pursuant to the MSP program;

d.   Whether Defendants' false representations in connection with the sale of 3D cameras and associated services through Defendants' MSP program are likely to mislead reasonably prudent consumers acting reasonably under the circumstances;

e.   Whether Defendants made omissions of material facts;

f.   Whether Class members are entitled to damages;

g.   Whether Class members are entitled to restitution due to lost profits or diminished sales as a direct and legal result of Defendants' unlawful, deceptive, and/or fraudulent business acts or practices in relation to Defendants' promotion, solicitation, and sale of equipment and services under the MSP program and Defendants' Capture Services program;

h.   Whether Class members are entitled to rescind all of their contracts with Defendants;

i.   Whether Class members are entitled to injunctive and/or declaratory relief;

j.   Whether Class members are entitled to restitution;

k.   Whether Defendants are liable for pre-judgment interest; and

l.   Whether Defendants are liable for attorneys' fees and costs.

79.   **Manageability and Superiority of Class Action Procedure**: The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein. Plaintiff and proposed Class Counsel will obtain necessary consultants, economists, and accountants that can review the books, sales reports, and sales transaction records, and articulate the nature of the claims for restitution, damages, and declaratory/injunctive relief to enjoin Defendants from continuous and ongoing violations of the law.

**CAUSES OF ACTION**

**COUNT I**
**Violations of the California Seller Assisted Marketing Plan Act,**
**and Cognate Laws of Other Jurisdictions**
**(By Plaintiff, On Behalf of the Multi-State Class, and Against each Defendant)**

80.    Plaintiff realleges paragraphs 1-79 of this complaint as though fully set forth herein.

81.    Defendants' conduct, as alleged herein, in advertising, promoting, and selling the Matterport 3D cameras, "Cloud Service Plans," and the MSP program rendered Defendants:

a.    a seller assisted marketing plan under the California SAMP Act, California Civil Code §§ 1812.201-202; and Nebraska Seller-Assisted Marketing Plan Act, Neb. Rev. Stat. § 59-1703;

b.    a seller of a business opportunity under the Alaska Sale of Business Opportunities Act, A.S. § 45.66.900(2); Connecticut Business Opportunity Investment Act, Conn. Gen. Stat. § 36b-61(2); Florida Sales of Business Opportunities Act, Fla. Stat. § 559.801(1); Illinois Business Opportunity Sales Law, 815 ILCS 602/5-5.10(a); Indiana Business Opportunities Transactions, Ind. Code § 24-5-8-1; Iowa Business Opportunity Promotions Law, Iowa Code § 551A.1(2)(a); Kentucky Sale of Business Opportunities Law, Kentucky Rev. Stat. § 367.801(5); Maine Regulations of the Sales of Business Opportunities Act, 32 Maine Rev. Stat. § 4691(3); Maryland Business Opportunities, Franchises and Multilevel Distribution Companies Act, Maryland Code of Business Regulation § 14-101(b); Michigan Consumer Protection Act Michigan Compiled Laws § 445.902(1)(a); North Carolina Business Opportunity Sales Law, N.C. Gen. Stat. § 66-94; Ohio Business Opportunity Plans, Ohio Rev. Code § 1334.01(D); Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. § 802(3); South Carolina Business Opportunity Sales Act, S.C. Code § 39-57-20; South Dakota Business Opportunities Act, S. Dak. Codified Laws § 37-25A-1(2); Texas Business Opportunity Act,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Tex. Bus. & Com. Code § 51.003(a); Virginia Business Opportunity Sales Act, Va. Code § 59.1-263(A); Washington Business Opportunity Fraud Act, Wash. Rev. Code § 19.110.020(1); and Washington D.C., D.C. Code § 28-3901(7); and

c.    a franchise under Minnesota Commercial Regulations on Franchises, Minn. Stat. § 80C.01, Subd. 4(a)(3)(iii).

82.    Plaintiff and Multi-State Class members purchased Matterport 3D cameras and Cloud Services, and participated in Defendants' MSP program by entering into contracts for equipment and services from Defendants to obtain a business opportunity and lead assistance.

83.    Defendants failed to comply with registration requirements for seller assisted marketing plans, business opportunities, and franchises, namely, A.S. § 45.66.010; Cal. Civ. Code §1812.203; Conn. Gen. Stat. §36b-62(a), (b); 815 ILCS 602/5-25; Ind. Code § 24-5-8-4(a); Iowa Code § 551A.7; Ky. Rev. Stat. § 367.805; 32 Me. Rev. Stat. § 4696; Md. Code, Bus. Reg. § 14-113; Mich. Comp. Laws § 445.903b; Minn. Stat. § 80C.04, Subd. 1; Neb. Rev. Stat. Ann. § 59-1724; N.C. Gen. Stat. § 66-97(a); 71 Okla. Stat. § 807; S.C. Code § 39-57-50(a); S. Dak. Codified Laws § 37-25A-8; Tex. Bus. & Com. Code § 51.051; and Wash. Rev. Code § 19.110.050(2).

84.    As of at least July 9, 2019, Defendants did not register with the California OAG as required by California Civil Code § 1812.203. This was confirmed via email by the OAG's office.

85.    Defendants failed to comply with disclosure requirements for seller assisted marketing plans, business opportunities, and franchises, namely, A.S. §§ 45.66.080(a), (b)(1)-(12), 9 AAC 16.020; Cal. Civ. Code §§ 1812.205-206; Conn. Gen. Stat. § 36b-63(d); Fla. Stat. § 559.803; 815 ILCS 602/5-35(a), (b)(1)-(25); Ind. Code § 24-5-8-2(a), (b); Iowa Code § 551A.3; Ky. Rev. Stat. §§ 367.809(2), 367.813, 367.805(1); 32 Me. Rev. Stat. §§ 4692, 4693, 4694; Md. Code, Bus. Reg. § 14-114(a)-(c); Mich. Comp. Laws § 445.903b(1); Minn. Stat. § 80C.04, Subd. 1, § 80C.06, Subd. 5; Neb. Rev. Stat. §§ 59-1732, 59-1733(1)-(9), 59-1735-1742; N.C. Gen. Stat. §§ 66-95, 66-100(b)-(e), 75-16.2; Ohio Rev. Code § 1334.02; 71 Okla. Stat. § 808;

S.C. Code § 39-57-30; S. Dak. Codified Laws §§ 37-25A-14, 37-25A-15; Tex. Bus. & Com. Code §§ 51.151, 51.163, 51.302; Va. Code § 59.1-264; and Wash. Rev. Code § 19.110.070.

86.     In addition, in making untrue, false, misleading, and deceptive statements in connection with their sale of 3D cameras to Plaintiff and the Multi-State Class members, Defendants engaged in prohibited, deceptive, and fraudulent conduct in violation of: A.S. § 45.66.150; Cal. Civ. Code § 1812.204; Conn. Gen. Stat. § 36b-67; Fla. Stat. §§ 559.809(1)-(5), (11)-(14); 815 ILCS 602/5-95(a)(1)-(3), (b)(1)-(3); Ind. Code §§ 24-5-8-5(a), (b); Iowa Code §§ 551A.9(1)-(3); Ky. Rev. Stat. § 367.815(1); 32 Me. Rev. Stat. §§ 4699(2), (4); Md. Code, Bus. Reg. § 14-121; Mich. Comp. Laws §§ 445.903, 445.903b(1); Minn. Stat. § 80C.13, Subds. 1, 2; Neb. Rev. Stat. §§ 59-1757(1)(b), (d); N.C. Gen. Stat. § 66-98(1); Ohio Rev. Code § 1334.03(A)-(B); 71 Okla. Stat. § 819; S.C. Code § 39-57-60(1); S. Dak. Codified Laws §§ 37-25A-43, 37-25A-46; Tex. Bus. & Com. Code §§ 51.301(1), (3)-(4); Va. Code § 59.1-266(1); Wash. Rev. Code §§ 19.110.120(a)-(c); and D.C. Code § 28-3904.

87.     The applicable statute of limitations for Count I in the jurisdictions comprising the Multi-State Class are:

    a.     Twelve years for Maryland (Md. Code, Bus. Reg. § 14-126(a)(1), Md. Code, Cts. & Jud. Pro. § 5-102(a));

    b.     Ten years for Indiana (Ind. Code §§ 24-5-8-16, 34-11-1-2(a));

    c.     Six years for Connecticut (Conn. Gen. Stat. § 36b-74(a), (g)); Maine (14 Me. Rev. Stat. § 752); and Michigan (Mich. Comp. Laws § 445.911(7));

    d.     Five years for Kentucky (Ky. Rev. Stat. §§ 367.819(1), 413.120(1)); and Nebraska (Neb. Rev. Stat. § 59-1758);

    e.     Four years for Florida (Fla. Stat. §§ 95.11(3)(f), 559.813(1), (2)); North Carolina (N.C. Gen. Stat. §§ 66-100(a), (e), 75-16.2); and Washington (Wash. Rev. Code §§ 19.86.120, 19.110.170);

    f.     Three years for California (Cal. Code Civ. Proc. § 338(a), Cal. Civ. Code § 1812.215); Illinois (815 ILCS 602/5-130(a)); Iowa (Iowa Code § 551A.8(3)); Minnesota (Minn. Stat. § 80C.17, Subd. 5); Ohio (Ohio Rev.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Code §§ 1334.09, 1334.10); Oklahoma (71 Okla. Stat. § 826(A)); South

Carolina (S.C. Code Ann. §§ 39-5-150, 39-57-80(a), (e)); South Dakota

(S. Dak. Codified Laws § 37-25A-52); Virginia (Va. Code §§ 8.01-

246(4), 59.1-268); and Washington D.C. (D.C. Code §§ 12-301(8), 28-

3905(d)(1)); and

g.    Two years for Alaska (A.S. §§ 45.66.120(b), 45.66.130(b)); and Texas

(Tex. Bus. & Com. Code Ann. § 17.565).

88.    As a direct, legal, and proximate result of Defendants' unlawful and unfair

business practices, Plaintiff and Multi-State Class members have suffered injury in fact and

harm, actual damage and losses, and are entitled to rescind their contracts and obtain judgment

for actual damages, statutory damages, and other damages, in an amount according to proof. *See*

A.S. §§ 45.66.120(a), 45.66.130(b); Cal. Civ. Code §§ 1812.215(a), 1812.218; Conn. Gen. Stat.

§ 36b-74; Fla. Stat. § 559.813(1), (2); 815 ILCS 602/5-120(a), (b), (c); Ind. Code §§ 24-5-8-15,

24-5-8-16(a), 24-5-8-17; Iowa Code § 551A.8(1); Ky. Rev. Stat. §§ 367.815(1), 367.819(1); 5

Me. Rev. Stat. § 205-A, 32 Me. Rev. Stat. § 4700(1), (6); Md. Code, Bus. Reg. § 14-126(a)(1),

(b); Mich. Comp. Laws § 445.911(2); Minn. Stat. §§ 80C.17, Subd. 1, 80C.17, Subd. 3; Neb.

Rev. Stat. §§ 59-1752, 59-1754, 59-1758(1), 59-1759; N.C. Gen. Stat. § 66-100(a)-(e); Ohio

Rev. Code §§ 1334.05(A)(1)-(2), 1334.09; 71 Okla. Stat. § 824(A), (B); S.C. Code Ann. § 39-

57-80(a), (e); S. Dak. Codified Laws §§ 37-25A-48, 37-25A-50; Tex. Bus. & Com. Code Ann.

§§ 17.50, 51.159, 51.302; Va. Code § 59.1-268; Wash. Rev. Code §§ 19.110.110(4)(d),

19.110.130; D.C. Code §§ 28-3904, 28-3905(k)(1)(A), (k)(2).

89.    Plaintiff will seek recovery of reasonable attorneys' fees and litigation costs as

provided for enforcement of an important public right in an amount according to proof and

subject to court approval.

90.    To the extent losses and damages are reasonably ascertainable, Plaintiff will seek

pre- and post-judgment interest at the legal rate of 10% per annum as part of the judgment.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**COUNT II**
*** In the alternative to Count I ***
**Violations of Seller Assisted Marketing Plan Act, Cal. Civ. Code §§ 1218.200, *et seq.***
**(By Plaintiff, On Behalf of the National Class, and Against each Defendant)**

91.     Plaintiff realleges paragraphs 1-79 of this complaint as though fully set forth herein. This count is pled in the alternative to Count I.

92.     Defendants' conduct, as alleged herein, in advertising, promoting, and selling Matterport 3D cameras, "Cloud Service Plans," and the MSP program rendered Defendants a Seller Assisted Marketing Plan. Cal. Civil Code §§ 1812.201.

93.     Plaintiff and National Class members purchased Matterport 3D cameras, "Cloud Service Plans," and participated in Defendants' MSP program by entering into contracts for equipment and services from Defendants to obtain a business opportunity and lead assistance.

94.     Defendants' offers to sell and Defendants' sales to Plaintiff and National Class members occurred in California for one or more of the following reasons: (1) Defendants' offer to sell was made in this state; (2) the purchaser resided in this state at the time of the offer or sale; (3) the offer to sell either originated from this state or was directed by the seller to this state and received at the place to which it was directed; and (4) Plaintiff and National Class members communicated Plaintiff's and National Class members' acceptance to Defendants situated in this state. *See* Cal. Civ. Code § 1812.202(a)-(b).

95.     In addition, the terms of sale governing Plaintiff's and National Class members' purchases of Matterport 3D cameras, and governing Matterport's Cloud Service Plan between Defendants and Plaintiff and National Class members, provide that these sales "shall be interpreted in accordance with the laws of the state of California without reference to its conflict of law provisions." The Matterport Terms of Use further provide that its services are "controlled and operated by Matterport from its offices within the State of California."

96.     Defendants failed to comply with registration requirements for seller assisted marketing plans and business opportunities, namely Cal. Civ. Code §1812.203.

97.     As of at least July 9, 2019, Defendants did not register with the California OAG as required by California Civil Code § 1812.203. This was confirmed via email by the OAG's

- 23 -
Class Action Complaint

office.

98.    Defendants failed to comply with disclosure requirements for seller assisted marketing plans and business opportunities, namely Cal. Civ. Code §§ 1812.205-206.

99.    In addition, in making untrue, false, misleading, and deceptive statements in connection with their sale of 3D cameras and related services to Plaintiff and National Class members, Defendants engaged in prohibited, deceptive, and fraudulent conduct in violation of Cal. Civ. Code § 1812.204.

100.    The applicable statute of limitations for Count II is three years under Cal. Code Civ. Proc. § 338(a), and Cal. Civ. Code § 1812.215.

101.    As a direct, legal, and proximate result of Defendants' unlawful and unfair business practices, Plaintiff and National Class members have suffered injury in fact and harm, actual damage and losses, and are entitled to rescind their contracts and obtain judgment for actual damages, statutory damages, and other damages, in an amount according to proof. *See* Cal. Civ. Code §§ 1812.215(a), 1812.218.

102.    Plaintiff will seek recovery of reasonable attorneys' fees and litigation costs as provided for enforcement of an important public right in an amount according to proof and subject to court approval.

103.    To the extent losses and damages are reasonably ascertainable, Plaintiff will seek pre- and post-judgment interest at the legal rate of 10% per annum as part of the judgment.

## COUNT III
**Violation of California Business & Profession Code §§ 17200, *et seq.* for Engaging in Unlawful, Unfair, and Deceptive Business Acts and/or Practices
(By Plaintiff, On Behalf of the National Class, and Against each Defendant)**

104.    Plaintiff realleges paragraphs 1-79 of this complaint as though fully set forth herein.

105.    California Business & Professions Code § 17200 prohibits "unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."

106.    California Business & Professions Code § 17203 provides in pertinent part:

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . .

107.    As alleged above, Defendants have engaged and continue to unlawfully engage in fraudulent, unfair, and unlawful business practices by making false representations and omissions of material fact regarding the market for 3D camera services, the profitability of 3D camera services, the ease of learning how to use the 3D cameras to create scans, the nature and efficacy of Defendants' assistance in rendering 3D camera services, and that Matterport would become a direct competitor for scanning business as against the camera purchaser and/or MSPs.

108.    Defendants engaged in fraudulent, unfair, and unlawful conduct by failing to comply with the registration and disclosure requirements set forth by the SAMP Act and its cognate laws in other jurisdictions, and engaging in deceptive, misleading, and false advertising in connection with the sale of their 3D cameras and the business opportunity as a member of their MSP program.

109.    Defendants' representations, solicitations, advertisements, and marketing materials claim that their MSP program will provide a lucrative business opportunity and that, with their "lead filtering," the initial purchase price of Matterport's program and equipment will pay off the initial investment for the 3D cameras, and will "pay for itself in 6 months." Plaintiff, and upon information and belief the National Class members, have received little or no leads, cannot profit from their equipment, and continue to pay monthly fees to access scanned images and avoid losing access to images they created, which Matterport contends is its intellectual property even though Matterport did nothing to capture the initial images.

110.    Plaintiff and the members of the National Class reasonably relied on Defendants' fraudulent, unfair, and unlawful conduct alleged herein. Plaintiff and the members of the National Class would not have purchased Defendants' 3D cameras and associated products and services had they known Defendants' representations were false.

111.    As a direct, legal, and proximate result of Defendants' unlawful and unfair business practices, Plaintiff and National Class members have suffered injury in fact and have lost money or property in terms of out-of-pocket losses, lost time and effort, lost sales and diminished profits, and equipment that only operates properly with continued fees paid to Defendants under the MSP program. Accordingly, Plaintiff and National Class members are entitled to rescind their contracts and obtain damages and restitution from Defendants caused by Defendants' unlawful, unfair, and fraudulent business practices, in an amount according to proof. Cal. Bus. & Prof. Code §§ 17203-17204.

112.    The statute of limitations applicable to Count III is four years. *See* Cal. Bus. & Prof. Code § 17208.

113.    Plaintiff requests a declaration that Defendants' conduct constitutes an ongoing violation of the SAMP Act and cognate laws of other jurisdictions, and will ask the Court to enjoin Defendants from engaging in illegal conduct that is continuous and ongoing as of the date of commencement of this action.

114.    Further, in addition to restitution, declaratory and injunctive relief, Plaintiff seeks an award of reasonable attorneys' fees and costs, and expenses for an accounting, based on enforcement of a key and critical matter of public and concern pursuant to Cal. Code of Civ. Proc. § 1021.5, in an amount according to proof and subject to Court approval.

## COUNT IV
### Violations of the False Advertising Law,
### California Business & Professions Code §§ 17500, *et seq*.
### (By Plaintiff, On Behalf of the National Class, and Against each Defendant)

115.    Plaintiff realleges paragraphs 1-79 of this complaint as though fully set forth herein.

116.    California Business & Professions Code §§ 17500, *et seq*. prohibits untrue or misleading advertising that is known, or which reasonably should be known, to be untrue or misleading. A violation of California Business & Professions Code §§ 17500, *et seq*. is also a violation of §§ 17200, *et seq*., which prohibits "any unfair, deceptive, untrue or misleading advertising." *Committee on Children's Television, Inc. v. General Foods Corp.* (Cal. 1983) 35 Cal.3d 197, 210.

117.    Defendants' representations, solicitations, advertisement, and marketing materials claim that their MSP program will provide a lucrative business opportunity and that with their "lead filtering," the initial purchase price of Matterport's program and equipment will pay off the initial investment for the 3D camera, and will "pay for itself in 6 months." Plaintiff, and upon information and belief the National Class members, have received little or no leads, cannot profit from their equipment, and continue to pay monthly fees to access scanned images and avoid losing access to images they created, which Matterport contends is its intellectual property even though Matterport did nothing to capture the initial images. Defendants have made false representations and omissions of material fact regarding the market for 3D camera services, the profitability of 3D camera services, the ease of learning how to use the 3D cameras to create scans, the nature and efficacy of Defendants' assistance in rendering 3D camera services, and that Matterport would become a direct competitor for scanning business as against the camera purchaser and/or MSPs.

118.    The statute of limitations applicable to Count IV is four years. *See* Cal. Bus. & Prof. Code § 17208.

119.    As a direct, legal, and proximate result of Defendants' illegal, unfair, and deceptive conduct and business practices, Plaintiff and National Class members have suffered actual harm and injury in the loss or diminishment of sales directly related to the unfair and anti-competitive advantage exploited by Defendants. Plaintiff, on behalf of himself and the members of the National Class, will seek damages and restitution from Defendants in an amount according to proof. Cal. Bus. & Prof. Code §§ 17200, 17203-17204.

120.    Plaintiff requests and will seek an order declaring that Defendants' representations are false and misleading as to business opportunity and gains, as well as with regard to the ownership of scanned images, since the author of the image is the person who did the scan. Purchasers of Defendants' MSP program were misled and, if they ever stop payment of the monthly fee, they lose all access to their prior images.

121.    In addition to damages, restitution, and declaratory and injunctive relief, Plaintiff will seek an award of reasonable attorneys' fees and costs, and expenses for an accounting, based on enforcement of a key and critical matter of public and concern pursuant to Cal. Code of Civ.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Proc. § 1021.5, in an amount according to proof and subject to Court approval.

**COUNT V**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(By Plaintiff, On Behalf of the National Class, and Against each Defendant)**

122.    Plaintiff realleges paragraphs 1-79 of this complaint as though fully set forth herein.

123.    Plaintiff and National Class members had a contract with Matterport regarding the MSP program. To be eligible for the MSP program, Plaintiff and National Class members had to own at least one Matterport 3D Camera, have a current subscription to the Matterport Cloud, and must agree to the Matterport Terms and Conditions.

124.    Matterport promised to provide leads for 3D scanning jobs through Matterport's lead-matching algorithm, and marketing assistance, to Plaintiff and National Class members. Matterport promised to facilitate MSPs' business expansion, and provide leads and marketing materials and technical training, to ensure the success of the MSPs' business.

125.    The law implies in every contract a covenant of good faith and fair dealing.

126.    Matterport owes a duty to Plaintiff and National Class members not to do anything that will injure their rights to receive the benefits of the agreement. Stated in other words, Matterport owes Plaintiff and National Class members a duty to do everything that the agreement presupposes Matterport will do to accomplish its purpose. The necessary implication of Matterport's promise to provide MSPs with leads is that Matterport will not directly compete with MSPs for these potential leads, withhold these leads from MSPs, and conceal that conduct from them.

127.    Matterport's conduct in competing with Plaintiff and National Class members when Matterport promised them that Matterport would facilitate MSPs' business expansion and provide leads and marketing materials and technical training constituted objectively unfair competition and unfair conduct.

128.    Matterport directs high value MSP leads to its inside sales representatives, rather than sharing the leads with MSPs, so Matterport can try to sell them a camera instead of referring the lead to an MSP. Additionally, Matterport pursues potential clients by offering them Capture Services technicians with special low pricing in order to undercut MSPs, so Matterport

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

can get the scanning business instead of referring the business to MSPs. And, Matterport actively pursues MSPs' current customers to steal them away from the MSPs and enroll them into Matterport's capture Services program. This misconduct is ongoing.

129.    The applicable statute of limitations for Count IV is four years. See Cal. Civ. Proc. Code § 337(a).

130.    Matterport's breach of the implied covenant of good faith and fair dealing proximately caused Plaintiff and National Class members injury and damages, as they were unable to receive opportunities to pursue leads for 3D scanning business because Matterport met the demand before communicating those leads to Plaintiff and National Class members. Plaintiff and National Class members were consequently deprived of potential leads and clients by Matterport who had a contractual duty to do the opposite (*i.e.*, provide the filtered leads to the MSPs so the MSPs, not Matterport, could get the business).

131.    Matterport competes with MSPs through its Matterport Capture Services program, which has special pricing to undercut MSPs. Matterport was secretly developing this program— designed to directly compete against MSPs—at the same time Matterport was making the false representations complained of herein and enrolling Plaintiff and National Class members into the MSP program. Through the Matterport Capture Services program, Matterport has taken opportunities away from MSPs who Matterport had promised to help grow their business, and Matterport has taken away, and continues to take away, MSPs' existing clients.

132.    Plaintiff and National Class members suffered damages as a result of Matterport's bad faith and unfair conduct in violation of its covenant of good faith and fair dealing, including lost profits.

## COUNT V
### Injunctive Relief
### (By Plaintiff, On Behalf of the Injunctive Relief Class, and Against each Defendant)

133.    Plaintiff realleges paragraphs 1-132 of this complaint as though fully set forth herein.

134.    As plead herein, Defendants have committed a tort or wrongful act. Defendants never provided required disclosures under the SAMP Act or other similar laws, did not comply

with registration requirements, engaged in deceptive, unlawful, and unfair trade practices, and breached the covenant of good faith and fair dealing.

135.    Matterport deliberately shifted its business model and stopped accepting new applicants to the MSP program, and instead surreptitiously developed the Capture Services program to compete against MSPs.

136.    Rather than helping MSPs build their businesses as promised, Matterport competes with MSPs by offering special low pricing to prospective clients it wants to have that undercuts MSPs in the market.

137.    Lynch lost one of his regular clients, Cushman & Wakefield—which had provided approximately 26% of his company's revenue for 2021—to Matterport Capture Services.

138.    Other MSPs have complained about losing clients to Matterport. For example, in a public Facebook post from Steven K.G. Tibbe to Matterport User Group, the MSP states: "I lost a client directly to Matterport's sales team today."

139.    The Matterport Capture Services program constitutes an actual or threatened injury to MSPs' property or personal rights which cannot be compensated by an ordinary damage award. *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410, 256 Cal. Rptr. 240, 243 (Ct. App. 1989).

140.    Through the Matterport Capture Services program, Matterport has taken clients and potential clients away from Lynch and other MSPs. If the Capture Services program is allowed to continue, then MSPs will continue to suffer damages, including lost profits and lost business opportunities.

141.    Plaintiff seeks an injunction to prevent Matterport from operating its Capture Services program and competing against MSPs.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing allegations, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment as follows:

a.    That the Court issue an Order certifying that this action may be maintained as a class action as permitted by Cal. Code of Civ. Proc. § 382, and certify the Classes set forth herein, appointing the Plaintiff as representative of the Classes, and appointing the law firms of Cohelan

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Khoury & Singer and Zimmerman Law Offices, P.C. as Class Counsel for the Classes;

b.    Entering judgment in favor of Plaintiff and the Classes, and against Defendants, jointly and severally;

c.    Entering a declaratory judgment against Defendants—declaring that Defendants' conduct constitutes an ongoing violation of the SAMP Act and cognate laws of other jurisdictions—and enjoining Defendants from continuing to offer seller assisted marketing plans, business opportunities, and franchises until they have complied with the law;

d.    Entering a declaratory judgment against Defendants—declaring that Defendants' representations are false and misleading as to business opportunity and gains, as well as with regard to the ownership of scanned images, since the author of the image is the person who did the scan—and enjoining Defendants from continuing to assert that the MSPs' scans are the property of Matterport;

e.    Awarding Plaintiff and the Classes damages equal to the amount of actual damages that they sustained, statutory or liquidated damages allowable by law, plus punitive damages;

f.    Awarding Plaintiff and the Classes the remedy of rescission of contract, as allowable by law;

g.    Entering an injunction against Defendants to prevent Matterport from continuing to operate its Capture Services program and compete against MSPs;

h.    Awarding Plaintiff and the Classes attorney's fees and costs, including interest thereon, as allowed or required by law; and

i.    Granting all such further and other relief as the Court deems just and appropriate.

Dated: March 28, 2022           **COHELAN KHOURY & SINGER**

By: _____

Timothy D. Cohelan
Isam C. Khoury
J. Jason Hill

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*firm@attorneyzim.com*
*(Pro Hac Vice Applications Forthcoming)*

Attorneys for Plaintiff SHAWN LYNCH, and the putative Classes

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand trial by jury to the extent authorized by law.

Dated: March 28, 2022                **COHELAN KHOURY & SINGER**

By: _____
Timothy D. Cohelan
Isam C. Khoury
J. Jason Hill

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
firm@attorneyzim.com
*(Pro Hac Vice Applications Forthcoming)*

Attorneys for Plaintiff SHAWN LYNCH, and the putative Classes