UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN LYNCH,

      Plaintiff,

v.

MATTERPORT, INC, et al.,

      Defendants.

No. C 22-03704 WHA

**ORDER RE DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

In this false and deceptive advertising putative class action, defendants move to dismiss plaintiff's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Defendants, Matterport, Inc. and its directors (together, "Matterport"), market "3D cameras that create 3D models of real-world places, which have many potential applications, including in connection with real estate sales" (Amd. Compl. ¶ 33). Supporting these cameras, Matterport also offers services such as software for 3D image manipulation and cloud storage. Relevant here, Matterport developed the Matterport Service Partner (MSP) program as a way for individuals who purchased a camera to start their own businesses selling 3D scans they take using it.

Plaintiff Shawn Lynch alleges that he saw Matterport's ads for the MSP program in or around March 2018, purchased his first camera on March 28, 2018, and became an MSP on April 25, 2018 (*id*. ¶¶ 84–85, 87). According to Lynch, Matterport's ads made several material misrepresentations and omissions regarding how the MSP program could help members build their own "lucrative, self-owned business" (*id*. ¶¶ 38–39). After throwing himself into learning to use Matterport's cameras and starting his own 3D scanning enterprise, Lynch allegedly had little to show for the time and money he spent (*id*. ¶ 88). To add insult to alleged injury, Matterport purportedly launched another program, Matterport Capture Services, that competed against MSPs and took away one of Lynch's regular clients (*id*. ¶¶ 95–96).

On March 28, 2022, Lynch filed suit in the Superior Court of California against Matterport, Inc. and seven members of its board of directors. On April 13, 2022, he amended his complaint, and on June 23, 2022, Matterport removed his action to this federal court. In his amended complaint, Lynch asserts claims on behalf of himself as well as three putative classes of individuals who became MSPs:

> (i) a "multi-state" class for claims under California's Seller-Assisted Marketing Plan (SAMP) Act and the cognate laws of 21 other jurisdictions (Count I);
>
> (ii) a "national" class for claims under California's SAMP Act (Count II), Section 17200, *et seq*., of the California Business and Professions Code (Count III), Section 17500, *et seq*., of the California Business and Professions Code (Count IV), and the implied covenant of good faith and fair dealing (Count V); and
>
> (iii) an "injunctive relief" class seeking declaratory and injunctive relief untethered to any claim (Count VI)

(*id*. ¶¶ 98–100). Lynch seeks damages, recission of contract, injunctive relief, declaratory relief, and fees and costs.[1]

If these facts look familiar, it is because they are. On June 24, 2020, John Stemmelin — represented by the same lawyers who are representing Lynch — filed a class action complaint

---

[1] Plaintiff pleaded Count I (under California's SAMP Act and the cognate laws of 21 other jurisdictions on behalf of the "multi-state" class) in the alternative to Count II (under California's SAMP Act on behalf of the "national" class) (Amd. Compl. ¶ 120).

2

against Matterport, Inc. and seven members of its board of directors in the Northern District of California. *See Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA. Stemmelin based his claims on identical allegations that "Defendants never provided required disclosures, did not comply with registration requirements, engaged in deceptive, unlawful, and unfair trade practices, did not honor any geographic limitations," and "saturated ill-defined and non-lucrative markets." *Compare id.* (Amd. Compl. ¶ 9), *with Lynch* (Amd. Compl. ¶ 11). What's more, Stemmelin initially filed suit on behalf of putative "multi-state" and "national" classes of individuals who became MSPs and were allegedly injured due to Matterport's misrepresentations and omissions. *Compare Stemmelin* (Compl. ¶¶ 5–6), *with Lynch* (Amd. Compl. ¶ 98–99). He also raised very similar claims and sought very similar relief. *Compare Stemmelin* (Amd. Compl. ¶¶ 91–160), *with Lynch* (Amd. Compl. ¶¶ 110–69).

In the *Stemmelin* action, this Court granted Matterport's motion to dismiss the putative "multi-state" class claim for lack of standing and the other putative class and individual claims for failure to state a claim. After it granted in part Stemmelin's motion for leave to amend and Stemmelin filed an amended complaint, this Court denied his motion for class certification and granted in part Matterport's motion for summary judgment. Only a few of Stemmelin's individual claims against Matterport, Inc. remain, and they are set for trial next month. In the meantime, his lawyers appear to have sought a class action do-over elsewhere. A mere two weeks after Stemmelin's motion for class certification was denied in the Northern District of California, Lynch filed suit in California state court. His lawyers expressly acknowledge that they "seek[] certification of a narrower class than what was sought in the *Stemmelin* case" and used California law that this Court "found . . . applie[d] in the related *Stemmelin* case" (Opp. 4 n.2, 5). Once Matterport removed Lynch's suit, the cases were related, and his lawyers landed before the undersigned once more, they sought to revitalize the *Stemmelin* action by filing a second class-certification motion with the *Lynch* action's narrower "national" class definition. But this Court struck that motion, observing it "appear[ed] to constitute a test motion for *Lynch*[.]" *Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2022 WL 4843089, at *2 (N.D. Cal. Oct. 3, 2022).

3

Now Matterport moves to dismiss all of Lynch's claims against the individual defendants, all of Lynch's claims on behalf of the putative "multi-state" and "injunctive" classes, as well as select claims against Matterport, Inc. In his opposition to Matterport's motion, Lynch withdraws his claims asserted on behalf of the putative "multi-state" class (Count I) "because the Court has already found that California law applies in the related *Stemmelin* case" (Opp. 1–2). He also withdraws his claim asserted on behalf of the putative "injunctive" class (Count VI) "because Defendants cite authority that injunctive relief is not an independent cause of action, and this relief is available and sought in other counts" (*id*. at 2). Thus, this order considers whether Lynch's remaining challenged claims survive: his putative class claims under California's SAMP Act, Section 17200, and Section 17500 (Counts II, III, and IV); and his individual claims under Section 17200 and Section 17500 (Counts III and IV). Like all counsel, this order shamelessly borrows from its work in the *Stemmelin* action. It follows full briefing and oral argument.[2]

**ANALYSIS**

A complaint must allege sufficient factual matter to state a facially plausible claim for relief. Allegations merely consistent with liability do not cut it; rather, the allegations must indicate or permit the reasonable inference, without speculation, of defendants' liability for the conduct alleged. We take as true all factual allegations, but legal conclusions merely styled as factual allegations may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[3]

---

[2] Note defendants do not expressly move to dismiss plaintiff's individual claim under the SAMP Act (Count II) or putative class and individual claims under the implied covenant of good faith and fair dealing (Count V) against Matterport, Inc. (*see* Br. 23). Although they raise certain "grab bag" arguments that would have the effect of dismissing these claims if accepted, such arguments are rejected *infra*.

[3] Briefly, this Court explained why California law applies in the *Stemmelin* action: "California favors enforcement of choice-of-law provisions. A reasonable basis exists for the choice of California law. Matterport cannot now dispute the applicability of its own contract provisions or California's interest in having its law apply to Matterport." *Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2022 WL 3226973, at *2 (N.D. Cal. Aug. 10, 2022) (citing *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001); *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 985–90 (N.D. Cal. 2022) (Judge Beth Labson Freeman)).

4

### 1. CLAIMS AGAINST INDIVIDUAL DEFENDANTS.

This order begins with plaintiff's claims against the individual defendants. Lynch brings all of his claims — putative class and individual claims — against seven members of Matterport, Inc.'s board of directors because each "directly or indirectly controls Matterport" (Amd. Compl. ¶¶ 21–27). Stemmelin did the same. *See Stemmelin* (Amd. Compl. ¶¶ 15–21). Just as they did in the *Stemmelin* action, defendants move to dismiss all claims against the directors here (Br. 12–15). Lynch's claims fail for precisely the same reasons that Stemmelin's claims did:

> Though the corporate form does not protect officers from their own tortious conduct, it usually insulates them from liability for corporate dealings. *See Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 507–08, 723 P.2d 573 (1986). Thus, "[t]he concept of vicarious liability has no application to actions brought under the unfair business practices act. A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [S]ection 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (internal quotations and citations omitted).
>
> The complaint names RJ Pittman, Dave Gausebeck, Matt Bell, Carlos Kokron, Peter Hebert, Jason Krikorian, and Mike Gustafson as officers with direct or indirect control over defendant Matterport, but *never again uses their names*, much less alleges any actions they took to perpetrate the alleged wrongdoing. The amended complaint leaves us no basis to discern individual conduct, so the Section 17200, 17500, breach of the implied covenant of good faith and fair dealing, [and] California Seller Assisted Marking Plan . . . claims fail against the named directors.

*Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2021 WL 411366, at *5 (N.D. Cal. Feb. 4, 2021) (emphasis in original). Because there are no allegations in Lynch's complaint that the individual defendants personally participated in or authorized any wrongdoings, all claims against them are dismissed.[4]

Plaintiff's counsel were on notice that the claims against the individual defendants were inadequate under California law after their dismissal in the *Stemmelin* action. Even so, they

---

[4] Meanwhile, in the *Stemmelin* action, a claim under the Illinois Business Opportunity Sales Law (BOSL) against the individual defendants survived because the state statute specifically allows for director liability. *See Stemmelin*, 2021 WL 411366, at *5 (citing 815 ILCS 602/5-125).

included precisely the same claims against the individual defendants in this action. Our court of appeals has held that a district court does not abuse its discretion in denying leave to amend a complaint when a plaintiff "provided no satisfactory explanation for his failure to fully develop his contentions originally[.]" *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982). But wary of prejudicing Lynch based on his lawyers' missed takeaways from the *Stemmelin* matter, this order will allow him to seek leave to amend the dismissed claims against the individual defendants to the extent stated *infra*.

2.  **CLAIMS AGAINST MATTERPORT, INC.**

    A.  *TIME-BARRED PUTATIVE CLASS CLAIMS.*

This order turns to plaintiff's remaining challenged claims against Matterport, Inc. Defendants argue, *inter alia*, that plaintiff's putative class claims under California's SAMP Act and Section 17500 a/k/a California's False Advertising Law (Counts II and IV) are time-barred. This order agrees.

"[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). But if class certification is denied, a putative class member cannot commence a class action anew beyond the time allowed by a putative class claim's statute of limitations. The Supreme Court has expressly clarified that *American Pipe* "allow[s] unnamed class members to join the action individually or file individual claims if the class fails" but "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). And our court of appeals has long "interpreted *American Pipe* not to allow tolling when the district court in the previous action had denied class certification, and when the second action sought to relitigate the issue of class certification and thereby to circumvent the earlier denial." *Cath. Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1147 (9th Cir. 2000) (en banc).

California's SAMP Act and Section 17500 claims have three-year statutes of limitations. *See* Cal. Code Civ. Proc. § 338(a). According to defendants, these statutes of limitations began

6

to run when Lynch purchased his first Matterport camera on March 28, 2018, or when he became an MSP on April 25, 2018 (Br. 9–10). Because plaintiff filed his initial complaint in California state court on March 28, 2022 — more than three years after he purchased a camera and became an MSP — his putative class claims under both statutory provisions are allegedly time-barred (*ibid.*). Meanwhile, according to plaintiff, his putative class claims under the SAMP Act and Section 17500 were timely filed on account of the discovery rule, which "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue" (Opp. 7 (quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (citation omitted)). "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing[.]" *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (Cal. 1988). Lynch avers that the statutes of limitations for his SAMP Act and Section 17500 putative class claims only began to run when Matterport announced its competitor program Matterport Capture Services in spring 2020 (Opp. 9). In light of this, he contends that he can raise these claims until spring 2023 (*ibid.*).[5]

Plaintiff's putative class claims under both statutory provisions are time-barred as pleaded. Lynch raises his tolling argument for the first time in his opposition, and "plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings[.]" *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). Again, Lynch may seek leave to amend to properly plead his discovery rule argument as set out *infra*. But if he chooses to do so, he must plead his best case. Any motion should affirmatively demonstrate how the omissions that plaintiff alleges could not have been

---

[5] Elsewhere plaintiff argues that Section 17500 claims are subject to a four-year statute of limitations — just like Section 17200 claims — because a violation of Section 17500 is also a violation of Section 17200 under California's Business and Professions Code. "Although some courts have held that claims under California's false advertising law are governed by the four-year statute of limitations under Cal. Bus. & Prof. Code § 17208, this four-year statute of limitations is limited to a single chapter that does not include Cal. Bus. & Prof. Code § 17500." *Valentino S.p.A. v. Mario Valentino S.p.A.*, No. 19-CV-06306-JAK, 2020 WL 7382765, at *6 n.2 (C.D. Cal. Nov. 4, 2020) (Judge John A. Kronstadt). As explained by defendants in their supplemental letter, the four-year statute of limitations for Section 17200 claims may apply to Section 17500 claims if the Section 17500 claims are brought as violations of Section 17200. Here, plaintiff does not assert his 17500 claim as a violation of Section 17200 (Count III) but rather as a standalone claim (Count IV).

7

1  discovered with sufficient detail until spring 2020 are applicable to his SAMP Act and Section
2  17500 putative class claims *specifically*. At present, it is unclear that plaintiff and putative
3  class members would have learned of "the wrongful conduct at issue" for these particular
4  claims as late as spring 2020 such that the discovery rule should apply.

With his putative class claims under the SAMP Act and Section 17500 dismissed as time-barred, plaintiff has two remaining putative class claims under Section 17200 and the implied covenant of good faith and fair dealing. Despite the forgoing analysis, this order cautions that serious questions remain concerning Lynch's ability to overcome deficiencies that plagued Stemmelin's putative class claims at the certification stage.

### B. "GRAB BAG" ARGUMENTS.

Finally, this order considers defendants' "grab bag" of lesser arguments raised to knock out different combinations of plaintiff's remaining putative class and individual claims. All are unavailing. This starts with the low-hanging fruit, those arguments already foreclosed by prior *Stemmelin* orders. Note Matterport is represented by the same counsel in the *Stemmelin* action as well.

*First*, defendants argue that plaintiff's claims for equitable relief fail because he fails to plead inadequacy of legal remedies (Br. 15–18 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020)). Specifically, defendants contend that because plaintiff asserts claims that provide for damages as a remedy (under the SAMP Act and implied covenant), his claims for equitable relief fail (under Section 17200 and Section 17500). Defendants make no effort to distinguish the contrary holding in the *Stemmelin* action, which dealt with claims that they recognize are "base[d] . . . on identical allegations" (Br. 7). Lightly adjusting what was already explained to defendants, in pertinent part:

> [Lynch's] Section 17200 and Section 17500 claims address different conduct than his other claims seeking legal damages . . . .
>
> [Lynch] may not explicitly use the phrase "inadequate remedy at law" in his pleading, but he need not use those words as some talismanic charm. There is no magic words test. *E.g., Tripp v. Clark Cty.*, 2020 WL 8084998, at *3 (D. Nev. Sept. 16, 2020) (Judge Brenda Weksler) (same). [Lynch's] allegations indicate that legal remedies would prove inadequate.

8

*Stemmelin*, 2022 WL 3226973, at *2–3.

*Second*, defendants assert that plaintiff's claims based on his "easy to use" misrepresentation theory fail because such statements are "non-actionable puffery" (Br. 22). Again, they make no attempt to distinguish the contrary holding in the *Stemmelin* action. So once again, this order directs defendants to the following:

> Defendants rate the ads and statements upon which plaintiff relied as mere puffery, that is, statements no reasonable consumer would actually rely on in making decisions. *See Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1053 (9th Cir. 2008). Our court of appeals has acknowledged that whether a statement is mere puffery *may* be determined on a motion to dismiss. *See Gerber*, 552 F.3d at 939 fn. 3; *see also*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (under the Lanham Act). On the other hand, the appellate court has cautioned against doing so in ordinary instances, particularly as "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Gerber*, 552 F.3d at 938. A plausible claim for deception will do.
>
> Contrary to defendants' argument, however, the alleged advertisements were more than puffery. Defendants promoted an opportunity to runs [sic] one's own business in the field of 3D photography. They broadcast a specific up-front investment ($4,100), set a definite timeline for a potential-MSP to recoup her investment (six months), and promised substantial aid to new MSPs (training, start-up materials, and pre-qualified, location-specific business leads). Defendants' salespeople also told plaintiff which equipment to buy to run his business and represented that his equipment would stay up to date for some time. These manifestations could have created a certain expectation in the reasonable mind, one from which defendants might have and allegedly did materially deviate. At this stage, reasonable consumers could plausibly have relied on these ads to their detriment. The claim proceeds.

*Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2021 WL 411366, at *5 (N.D. Cal. Feb. 4, 2021).

*Third*, defendants contend that plaintiff does not meet the pleading requirements under Rule 9 of the Federal Rules of Civil Procedure for his claims sounding in fraud under Section 17200 and Section 17500 (Br. 18–19). As set out in an order granting in part Stemmelin's motion for leave to amend his complaint, to satisfy Rule 9:

9

The complaint must specify:

> [T]he time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. In other words, the pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quotations and citations omitted). We evaluate plaintiff's alleged reliance on the false advertising from the vantage of the "reasonable consumer" (unless the ad targets a specific, vulnerable population). This requires more than the possibility that some consumers will unreasonably misinterpret the ad. Rather, the complaint must plausibly allege that a significant portion of the public, acting reasonably, is likely to be deceived. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019).

*Stemmelin*, 2021 WL 411366, at *3. According to Lynch's amended complaint, he responded to a solicitation and advertisement for a business opportunity "from multiple solicitations from Defendants" that mentioned "match[ing] MSPs on local proximity to leads" in or around March 2018 (Amd. Compl. ¶ 84). He alleges that he purchased his first camera on March 28, 2018, and formally enrolled in the MSP program on April 25, 2018, having learned about it from "Matterport sales representatives and the MSP program pages on Matterport's website" (*id*. ¶¶ 85–87). Lynch's amended complaint specifies how he relied on the ads and representations, purchasing two cameras, an iPad, and a tripod mount, as well as paying website development fees and an annual $499.00 MSP access fee (*id*. ¶¶ 86, 88, 94). And it details the falsity of the representations, with defendants providing little technical training, inadequate marketing materials, and rare business "leads" (*id*. ¶¶ 89–91). Lynch's amended complaint also details how defendants entered the 3D scanning business themselves and poached one of his regular clients, Cushman & Wakefield (*id*. ¶¶ 95–96). This is sufficient to allege that a significant portion of the public, acting reasonably, is likely to be deceived, and sufficient to plead fraud at the motion to dismiss stage.

*Fourth*, defendants argue that plaintiff fails to properly plead his domicile (Br. 11). Lynch's amended complaint states that he "resid[es] in Washington D.C. and Reston, Virginia"

10

(Amd. Compl. ¶ 19). As noted in defendants' motion, a natural person can only have one domicile (Br. 11 (citing *Gaudlin v. Remis*, 379 F.3d 631, 636–37 (9th Cir. 2004))). And, as observed in plaintiff's opposition, whether Lynch is domiciled in Washington D.C. or Reston, Virginia, there is diversity of citizenship for the purposes of establishing federal court jurisdiction (Opp. 9; *see also* Notice of Removal ¶ 24 ("Defendants are citizens of Delaware and/or California.")).

*Fifth*, defendants aver that plaintiff cannot state claims under Section 17200 and Section 17500 because he fails to allege an injury-in-fact (Br. 21–22). Specifically, defendants state that because plaintiff's "business picked up" and he "purchased a second Matterport Pro 2 camera[,]" plaintiff cannot claim that he was injured by his alleged misrepresentations and omissions (*id.* at 21 (quoting Amd. Compl. ¶ 94)). According to defendants, "[t]he admitted fact that Plaintiff purchased a second Matterport Pro 2 camera after gaining this experience and knowledge is inconsistent with his contention that he 'would not have purchased Defendants' 3D cameras, purchased Matterport's Cloud subscriptions, and incurred out-of-pocket expenses to start and operate their own MSP business, had [he] known Defendants' representations were false and/or had [he] been aware of Defendants' omissions of material fact'" (*ibid.* (quoting Amd. Compl. ¶ 138)). Plaintiff counters that he "did not want to lose his significant investment in time and money," "continued to rely on Defendants' promises[,]" and "purchased a second camera because at the time 'business had picked up' due in large part to gaining Cushman & Wakefield as a client," who "contacted Plaintiff directly and was not a 'lead' from Matterport" (Opp. 20–21 (citing Amd. Compl. ¶ 95)). At this stage, all of plaintiff's factual allegations must be taken as true. Here, they permit the reasonable inference of injury stemming from the conduct plaintiff alleges, whereas defendants' allegations are predicated on contrary and restrictive inferences. This order agrees with Lynch that he has alleged a sufficient injury-in-fact for his claims under Section 17200 and Section 17500.

*Finally*, defendants argue that plaintiff has no Article III standing *at all* because his MSP business allegedly suffered an injury, not Lynch in his personal capacity (Br. 19–21). But Lynch alleges that "[he] applied to be an MSP and, thus, he was the one deceived" (Opp. 19

11

(citing Amd. Compl. ¶ 87)). Moreover, he explains "[t]he MSP Program Terms and Conditions provided that applicants submit business information to Matterport[,]" so "Plaintiff submitted the name of his company, I.C. Progress, as part of his MSP application" and he "is, and has been since the company was incorporated, the sole shareholder, sole director, and sole employee of I.C. Progress" (*ibid*.). As noted by our court of appeals, "[t]he fact that these injuries arose from the same conduct as the corporate injuries does not preclude a finding of direct and independent injury to individual plaintiffs for standing purposes." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989). Although this argument is original, it is also beside the point.

## CONCLUSION

In sum, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion as to all claims against individual defendants, as well as to plaintiff's SAMP Act and Section 17500 putative class claims (Counts II and IV) against Matterport, Inc., is **GRANTED**. But the motion as to the "multi-state" and "injunctive" putative class claims (Counts I and VI) is **DENIED** as **MOOT**. The motion as to all other challenged putative class and individual claims against Matterport, Inc. is **DENIED**. Defendants' request for judicial notice is not relied upon and is **DENIED** as **MOOT**. The answer is due in 14 calendar days.

Plaintiff's passing request for leave to amend is **DENIED**. By January 3, 2023, at noon, plaintiff may again seek leave to amend the dismissed claims by motion noticed on a normal 35-day calendar. Any motion should affirmatively demonstrate how the proposed complaint corrects the deficiencies identified in this order, as well as all other deficiencies raised in defendants' motion but not addressed herein. Any motion should be accompanied by a redlined copy of any proposed amendment.

**IT IS SO ORDERED.**

Dated: December 16, 2022.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE