UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN LYNCH, on behalf of himself and all other persons similarly situated,

    Plaintiff,

v.

MATTERPORT, INC,

    Defendant.

No. C 22-03704 WHA

**ORDER DENYING MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

Following the Court's order granting in part and denying in part defendant company and its individual directors' motion to dismiss, plaintiff moves for leave to file a second amended class action complaint. For the reasons stated herein, plaintiff's motion is **DENIED**.

## STATEMENT

The order on the motion to dismiss described the purported facts at issue. *See Lynch v. Matterport, Inc.*, 2022 WL 17740301, at *1–2 (N.D. Cal. Dec. 16, 2022). Briefly, they are as follows: defendant company Matterport markets 3D cameras that create 3D models of real-world places. Matterport developed the Matterport Service Partner (MSP) program as a way for individuals who purchased a camera to start their own businesses selling 3D scans they take using it. Plaintiff Shawn Lynch, who became an MSP, alleges that Matterport's ads made several material misrepresentations and omissions regarding how the MSP program could help

1    MSPs build their own businesses. According to Lynch, after throwing himself into learning to
2    use Matterport's cameras and starting his own 3D scanning enterprise, he had little to show for
3    the time and money he spent. What's more, Matterport purportedly launched another program,
4    Matterport Capture Services, that competed against MSPs and took away one of Lynch's
5    regular clients.

6    Lynch filed suit in the Superior Court of California against Matterport and seven
7    members of its board of directors, bringing claims on behalf of himself and three putative
8    classes of individuals who became MSPs. After Lynch amended his complaint, Matterport and
9    its individual directors removed the action to federal court. They then moved to dismiss all of
10   Lynch's claims against the individual directors, all of Lynch's claims on behalf of two putative
11   classes, as well as select claims against Matterport. In his opposition to the motion to dismiss,
12   Lynch withdrew his claims asserted on behalf of two putative classes. The Court then granted
13   in part and denied in part the motion, dismissing all claims against the individual directors as
14   well as plaintiff's putative class claims against Matterport under California's Seller-Assisted
15   Marketing Plan (SAMP) Act and Section 17500, *et seq.*, of California's Business and
16   Professions Code a/k/a False Advertising Law (Section 17500). In so doing, it allowed Lynch
17   to seek leave to amend the dismissed claims.

18   Plaintiff now moves for leave to file a second amended class action complaint. This
19   order follows full briefing and finds the motion suitable for disposition on the papers under
20   Civil Local Rule 7-1(b). The hearing is hereby **VACATED**.

**ANALYSIS**

22   Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely
23   given "when justice so requires." "When considering whether to grant leave to amend, a
24   district court should consider several factors including undue delay, the movant's bad faith or
25   dilatory motive, repeated failure to cure deficiencies by amendments previously allowed,
26   undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*,
27   953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility
28   of amendment can, by itself, justify the denial of a motion for leave to amend. If no

amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (internal quotation and citations omitted).

To withstand a motion to dismiss as a matter of law, a complaint must allege sufficient factual matter to state a facially plausible claim for relief. Allegations merely "consistent with" liability do not cut it; rather, the allegations must indicate or permit the reasonable inference, without speculation, of liability for the conduct alleged. All factual allegations must be taken as true, but legal conclusions merely styled as factual allegations may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

According to Lynch, the second amended class action complaint "addresses all of the deficiencies set forth in the Court's Order[,]" incorporating "factual allegations regarding each of the individual Defendants" and "factual allegations in support of application of the discovery rule to the claims of class members under the SAMP Act and the False Advertising Law" (Br. 3). This order takes them up in turn.

1. CLAIMS AGAINST INDIVIDUAL DIRECTORS.[1]

The Court previously dismissed Lynch's claims against the individual directors "[b]ecause there [were] no allegations in Lynch's complaint that the individual [directors] personally participated in or authorized any wrongdoings[.]" *Lynch*, 2022 WL 17740301, at *3. The first amended class action complaint merely named each individual director once as someone who "directly or indirectly controls Matterport[,]" never again using the directors' names or alleging actions they took to perpetuate misconduct. *Id*. (citing FAC ¶¶ 21–27).

According to Lynch, the second amended class action complaint would address this deficiency because it "alleges that Defendants, and each of them, each had knowledge and information sufficient to them to have authorized, ratified, and directed the acts of one another

---

[1] In this motion practice, the parties still refer to the individual directors as "individual defendants" (*see, e.g.*, Br. 3; Opp. 8). Because all claims against the individual directors were dismissed, however, the individual directors are not now defendants.

3

as their conduct relates to Defendants' uniform practices and treatment of the proposed Class members" (Br. 4 (citing SAC ¶ 26)). Moreover, it "includes allegations regarding over twenty meetings of the Board of Directors, identifies the date of each meeting, identifies which of the Individual Defendants were in attendance at the meeting, and describes the relevant topics discussed, evaluated, authorized, ratified, and directed by the Individual Defendants" (*ibid.* (citing SAC ¶¶ 31–52)). In his reply brief, Lynch withdraws the amended claims he sought to bring against the individual directors for violation of the SAMP Act and breach of the implied covenant of good faith and fair dealing (Reply Br. 6). Thus, this order considers only the remaining amended claims Lynch seeks to bring against the individual directors: those for violation of Section 17500 and Section 17200, *et seq.*, of California's Business and Professions Code a/k/a Unfair Competition Law.

As explained in the order on the motion to dismiss, "[t]hough the corporate form does not protect officers from their own tortious conduct, it usually insulates them from liability for corporate dealings." *Lynch*, 2022 WL 17740301, at *3 (citing *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 507–08 (Cal. 1986)). "A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices[.]" *Id*. (citing *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (Cal. 2002) (internal quotations and citations omitted)). As pleaded, none of the individual directors had unbridled control over the allegedly unlawful practices. The second amended class action complaint replaces "Defendants," "Board of Directors," and the like with the names of the individual directors (SAC ¶¶ 26–30); lists different combinations of individual directors who attended different board meetings at which strategy, sales, and marketing was discussed (SAC ¶¶ 31–52); and states that the individual directors "received complaints via emails directly from MSPs" (SAC ¶ 53). But Lynch still does not meaningfully differentiate the activities of each director such that it can be said for each director that their individual participation was the "guiding spirit behind the wrongful conduct" (Br. 6 (quoting *Kamal v. Eden Creamery, LLC*, 2019 WL 2617041, at *14 (S.D. Cal. June 26, 2019) (Judge Cynthia Bashant)).

4

Moreover, the individual participation that Lynch pleads — attending meetings, reviewing presentations, evaluating plans — consists of the sort of corporate responsibilities from which the corporate form was designed to insulate directors. "California law does not impose liability on corporate [directors] merely for their role in the corporation, but only for wrongful acts in which they have been personally involved." *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (Judge Edward M. Chen) (citing *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (Cal. 1970)). Absent assertions of personal involvement in purported wrongdoing beyond acting in their corporate capacities and "authoriz[ing], ratif[ying], and direct[ing]" the actions of Matterport, the allegations as to the individual directors' liability are conclusory and speculative. As such, this order does not reach arguments regarding alleged mismatch between remedies and claims.

2. **PUTATIVE CLASS CLAIMS UNDER THE SAMP ACT AND SECTION 17500.**

SAMP Act and Section 17500 claims have three-year statutes of limitations. *See Lynch*, 2022 WL 17740301, at *4 (citing Cal. Civ. Code Proc. § 338(a)). Lynch filed his initial complaint on March 28, 2022, more than three years after he purchased his first Matterport camera on March 28, 2018, and became an MSP on April 25, 2018. At the motion to dismiss stage, the parties agreed that Lynch's individual claims under the SAMP Act and Section 17500 were not time-barred because they were tolled from June 24, 2020, until March 14, 2022 — from the filing of the class action compliant until the denial of class certification in related action *Stemmelin v. Matterport, Inc.*, No. 20-04168. However, the parties disputed whether Lynch's putative class claims under the SAMP Act and Section 17500 were time-barred.[2]

---

[2] *See Lynch*, 2022 WL 17740301, at *3 ("'[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). But if class certification is denied, a putative class member cannot commence a class action anew beyond the time allowed by a putative class claim's statute of limitations. The Supreme Court has expressly clarified that *American Pipe* 'allow[s] unnamed class members to join the action individually or file individual claims if the class fails' but 'does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.' *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).").

The Court dismissed Lynch's putative class claims against Matterport under the SAMP Act and Section 17500 because they were presumptively time-barred but allowed Lynch to seek leave to amend to properly plead discovery tolling arguments first raised in his opposition to the motion to dismiss. Its order cautioned that "[a]ny motion should affirmatively demonstrate how the omissions that plaintiff alleges could not have been discovered with sufficient detail until spring 2020 are applicable to his SAMP Act and Section 17500 putative class claims *specifically*," recognizing that "[a]t present, it is unclear that plaintiff and putative class members would have learned of 'the wrongful conduct at issue' for these particular claims as late as spring 2020 such that the discovery rule should apply." *Lynch*, 2022 WL 17740301, at *4 (emphasis in original).

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing[.]" *Id.* (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (Cal. 1988)). The discovery rule "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Id.* (quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (citation omitted)). According to Lynch, the second amended class action complaint would sufficiently plead the discovery rule because Matterport's announcement of its competitor program permits delayed accrual for his SAMP Act and Section 17500 putative class claims (Br. 7–11). Specifically, "[b]ecause Matterport hid the 'lion operation' and the Capture Services program, including denying that they were still working on developing the Capture Services program after word got out about the precursor to the program, Plaintiff and Class members justifiably relied upon Matterport's misrepresentations and omissions until Matterport made its official public announcement in Spring 2020" (*id*. at 8–9 (citing SAC ¶ 129)). Accordingly, "Plaintiff and Class members could not have known that Matterport was running a fraudulent scheme until the announcement of Capture Services and the disappearing of lead generation for MSPs was discovered" (*id*. at 9 (citing SAC ¶ 129)). Lynch contends that he can raise both putative class claims until spring 2023.

The SAMP Act sets out registration and disclosure requirements for sellers of assisted marketing plans and business opportunities. Cal. Civ. Code §§ 1812.203–06. With respect to the SAMP Act putative class claim, Lynch argues that "in making untrue, false, misleading, and deceptive statements in connection with their sale of 3D cameras and related services to Plaintiff and National Class members, Matterport failed to comply with registration and disclosure requirements for Seller Assisted Marketing Plans" (Br. 9 (citing SAC ¶ 131)). Matterport counters that "regardless of when Capture Services Program ('CSP') went into effect or whether or not Plaintiff knew about it is irrelevant to his SAMP Act claims — Plaintiff knew or had reason to suspect that Defendants are allegedly not in compliance with the SAMP Act requirements before Spring 2020" and "would have been able to find out whether or not Matterport had complied with the SAMP Act's requirements with minimal diligence" (Opp. 6).

This order agrees with Matterport. As alleged, Lynch knew or had reason to suspect that Matterport was not in compliance with the SAMP Act well before Matterport announced the Matterport Capture Services program in spring 2020. According to Lynch, having relied on Matterport's March 2018 representations about a "business opportunity," he "entered into a 'seller assisted marketing plan' contract" and enrolled in the MSP program in April 2018 without receiving disclosures required by the SAMP Act (SAC ¶¶ 109–12). In other words, Lynch knew or had reason to suspect that Matterport was not in compliance with the SAMP Act as early as he became an MSP in April 2018. It is a "well-established rule that the ignorance of the legal significance of known facts . . . will not delay the running of the statute." *Jolly*, 44 Cal. 3d at 1112 n.8. Moreover, Lynch's allegation that "Matterport concealed its conduct so that Plaintiff and Class members would not discover its SAMP Act violations" is specious (Br. 9). It is unclear how concealment of Matterport Capture Services would prevent Lynch from discovering SAMP Act violations involving registration and disclosure with minimal diligence. And one would expect Lynch to conduct minimal diligence once he determined that he had not recouped his initial investment within a matter of months, as Matterport had suggested he would, for instance (SAC ¶ 162). Thus, the discovery rule does

7

1   not apply to plaintiff's putative class claim under the SAMP Act, and the clock began to run on
2   April 25, 2018, when Lynch became an MSP.  Lynch filed his initial complaint on March 28,
3   2022, almost four years later.  His SAMP Act putative class claim is time-barred on account of
4   its three-year statute of limitations.

5       Meanwhile, Section 17500 prohibits untrue or misleading advertising that is known, or
6   which reasonably should be known, to be untrue or misleading.  With respect to the Section
7   17500 putative class claim, Lynch argues that "[i]n view of Matterport's representations that it
8   would assist MSPs with their business opportunity in several ways (e.g., providing training,
9   tools and resources, and qualified leads, etc.), Matterport's conduct in omitting material facts
10  concerning its intention and participation as a competitor against MSPs was deceptive and
11  unfair conduct and business practices in violation of [Section] 17500" (Br. 9 (citing SAC
12  ¶ 130)).  Matterport counters that "[t]he fact that [it] allegedly surreptitiously developed its
13  Capture Services program and competed with Plaintiff[] may have added to his alleged
14  injuries, but the program itself was not the catalyst of his claims" under Section 17500, so
15  "Plaintiff cannot now rely on discovery rule to save his untimely claims" (Opp. 7).

16      Again, this order agrees with Matterport.  Note Lynch seeks to include the following
17  Section 17500 claim language in the second amended class action complaint:

> Defendants' representations, solicitations, advertisement, and marketing materials claim that their MSP program will provide a lucrative business opportunity and that, with their pre-qualified lead filtering, the initial purchase price of Matterport's 3D cameras will be recouped within a matter of months.  Plaintiff, and upon information and belief the Class members, have received few leads, cannot profit from their equipment, and continue to pay monthly fees to access scanned images and avoid losing access to images they created . . . Defendants have made false representations and omissions of material fact regarding the market for 3D scanning services, the profitability of 3D scanning services, the ease of learning how to use the 3D cameras to create the 3D scans, the nature and efficacy of Defendants' assistance in rendering 3D camera services, and omitted and concealed that Matterport would become a direct competitor against MSPs by selling 3D cameras to MSPs' clients and starting its own scanning service to compete against MSPs.

27  (SAC ¶ 172).  As Matterport observes, Lynch's putative class claim under Section 17500 does
28  not hinge on the omission that Matterport would become a direct competitor and start its own

8

scanning service to compete against MSPs. Rather, it draws upon several alleged omissions, including that "[t]he MSP program is a lucrative business opportunity and MSPs will recoup their initial investment within a matter of months" and that "Matterport will provide MSPs with pre-qualified local leads from businesses and individuals who are serious about purchasing 3D scanning services" (SAC ¶¶ 75, 79). As pleaded, Lynch knew or had reason to suspect that Matterport violated Section 17500 long before Matterport announced its Matterport Capture Services program in spring 2020 — at the latest, within a few months of him becoming an MSP. Even assuming that it would have taken Lynch six months to recognize these alleged omissions, permitting delayed accrual under the discovery rule until November 25, 2018, his initial complaint would have been filed more than three years later on March 28, 2022. Lynch's Section 17500 putative class claim is time-barred on account of its three-year statute of limitations.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file a second amended class action complaint is **DENIED**. The amended claims against the individual directors remain inadequately individualized, and the amended putative class claims against Matterport under the SAMP Act and Section 17500 remain time-barred.

To save counsel yet another trip to San Francisco, a separate case management order shall issue.

**IT IS SO ORDERED.**

Dated: January 31, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE