1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN LYNCH,

        Plaintiff,

    v.

MATTERPORT, INC.,

        Defendants.

No.  C 22-03704 WHA

**ORDER RE PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

## INTRODUCTION

In this putative class action, plaintiff asserts two business tort claims premised on false and deceptive advertising.  Plaintiff now moves to certify a class under Rule 23 for those two claims.  For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Our prior order presented the underlying facts in greater detail as well as this action's similarity to a prior action before the same judge, *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA (*see* Dkt. No. 34).  In sum, defendant Matterport, Inc. markets and sells 3D cameras that can be used to create 3D models of real-world spaces.  Matterport offers related services such as software for 3D image manipulation and cloud storage.  Importantly, Matterport also developed the Matterport Service Partner (MSP) program.  This program incentivized 3D camera purchases by helping individuals start their own businesses selling 3D scans captured with these cameras.  While enrollment in the program itself was free, eligibility

1   for enrollment was premised on owning a Matterport camera and having a subscription for

2   Matterport software and cloud storage.

3        Plaintiff Shawn Lynch alleges that Matterport's marketing of its MSP program was

4   deceptive.  After making financial investments to be eligible for (and then enrolling in) the

5   MSP program, he saw few of the benefits that incentivized him to join.  Furthermore, Lynch

6   alleges that Matterport also launched another program, Matterport Capture Services, which

7   competed directly with MSPs and further hindered his MSP business by taking away his

8   clients.  Plaintiff purchased a Matterport 3D camera and corresponding cloud storage

9   subscription in March 2018, and became an MSP a month later in April 2018 (Second Amd.

10  Compl. ¶¶ 82–86).

11       A prior order on a motion to dismiss winnowed the claims down to the two remaining:

12  violation of Section 17200 of the California Civil Code and a breach of the implied covenant of

13  good faith and fair dealing.  Plaintiff now seeks class certification for both claims on the

14  following class definition:

> All persons in the United States who, within the applicable statute
> of limitations, (a) did not previously own a Matterport 3D camera,
> (b) applied online through Matterport's website and became an
> MSP, and (c) purchased a Matterport 3D camera or Matterport
> Cloud3 services in connection with becoming an MSP, or incurred
> other expenses to start or operate their MSP business.

19  (Br. 1).  This order follows full briefing and oral argument.

## ANALYSIS

21       Plaintiff seeks an injunctive class under Rule 23(b)(2), a damages class under Rule

22  23(b)(3), and also various issue classes under Rule 23(c)(4).  For a class to be certified, a

23  plaintiff must first show that the four prerequisites of Rule 23(a) are met: (1) the class is so

24  numerous that joinder of all members is impracticable; (2) there are questions of law or fact

25  common to the class; (3) the claims or defenses of the representative parties are typical of the

26  claims or defenses of the class; and (4) the representative parties will fairly and adequately

27  protect the interests of the class.  Plaintiff bears the burden of demonstrating that these

28  requirements are met.  *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 n.4 (9th Cir.

United States District Court
Northern District of California

2013).  Within Rule 23's framework, the trial court has broad discretion over whether a class should be certified.  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

### 1.   INJUNCTIVE AND DAMAGES CLASSES.

In our prior related action *Stemmelin*, an order rejected a proposed nationwide class that included the same claims asserted here on the same facts.  *See* 2022 WL 783206.  Plaintiff, represented by the same lawyers in *Stemmelin*, now proposes a class definition that seeks to overcome the flaws which doomed class certification in the former.  The tweaks to the class definition fail to do so.

Our order in *Stemmelin* summarized "the core problem with class certification" as follows:

> Stemmelin alleges Matterport induced consumers to buy its 3D cameras through false representations and omissions regarding the MSP program.  However, enrolling as an MSP is merely a free, optional program that camera purchasers can sign up for *after they have already purchased their camera* (and after satisfying several other prerequisites besides).  Yet the classes Stemmelin seeks to certify necessarily include all MSPs, even those that bought their camera for reasons independent of their later decision to become an MSP.  So Stemmelin may have relied upon Matterport's deception regarding the MSP program to make his decision to purchase a camera.  But other consumers purchased their cameras for reasons completely unrelated to the MSP program, such as to help them facilitate their current construction or real-estate business.  And only later did these consumers decide to join the MSP program.  Yet those type of consumers are inherently included in, and cannot be extricated from, the putative classes. The fact of the matter is, the MSP program's relationship with the (antecedent) purchase of the camera is attenuated, yet the purchase of the camera is the premise for harm here.  This results in proposed classes that lack uniformity and cohesion.

*Id.* at *2.  In short, there was no common circumstance of reliance sufficiently defined on a classwide basis in *Stemmelin*.

Plaintiff attempts to rectify that problem here by adding requirements purporting to capture "only those who relied on the MSP advertisements and purchased a camera in connection with the MSP program" (Reply 3).  However, the proffered requirements merely state that the class is limited to MSPs who relied, and thus do not help.  The proposed

definition provides no parameters to actually define class members by distinguishing MSPs who relied on the asserted misrepresentations from those who did not (and became MSPs for independent reasons). Put another way, our order in *Stemmelin* refused to certify a class of *all* MSPs as a way to collect damages on the earlier camera purchases; so plaintiff now attempts to certify a subset of those MSPs merely by stating it will be a subset without defining that subset. Tellingly, plaintiff simply claims that "a large number of the 2,647 MSPs are class members" and that MSPs "will be able to self-identify [as class members] because they will know whether they previously owned a Matterport 3D camera and only purchased one to become an MSP" (Reply 4). This does not avoid the hopeless trial endeavor requiring individual by individual proof of reliance.

Plaintiff's inability to define the relevant subset of MSPs is but a symptom of the same underlying issue in *Stemmelin*, which is the lack of a coherent classwide theory of liability. True, "it is not a barrier to class certification that consumers may be required to self-identify to attest to purchasing the Products at issue." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020) (Judge William H. Orrick) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129, 1132 (9th Cir. 2017)). But the underlying issue here is not one of proof of purchase—instead, it is proof of reliance.

Plaintiff's argument that the theory of liability is fixed by defining requirements capturing "only those who relied on the MSP advertisements and purchased a camera in connection with the MSP program" (Reply 3) is directly contradicted by the proposed class definition, which actually *adds* expenditures other than the camera to the premise for harm: Requirement three of the proposed class definition defines a person that "purchased a Matterport 3D camera *or* Matterport Cloud3 services in connection with becoming an MSP, *or* incurred *other expenses* to start or operate their MSP business" (Br. 1 (emphases added)). The proposed definition is no panacea.

### A.   Numerosity.

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." This order presupposes that numerosity would be satisfied.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.    Commonality and Predominance.

"So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)). Nevertheless, Rule 23(a)(2) requires "a single *significant* question of law or fact."  *Abdullah*, 731 F.3d at 957 (emphasis in original) (citations omitted).  Whether that common question means commonality ultimately exists, however, depends on "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Parsons*, 754 F.3d at 675 (emphasis in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Predominance under Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  The predominance inquiry is more rigorous than that regarding commonality.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  The point of this predominance inquiry is to "test[] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Evaluating whether predominance is shown "begins, of course, with the elements of the underlying cause of action."  *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (citation omitted).

### (1) Rule 23(b)(3) Class for Section 17200 Claim

"In [Section 17200] cases, district courts must consider whether class members were exposed to the defendant's alleged misrepresentations, but for a single, critical purpose: establishing reliance."  *Ibid.*  Plaintiff lists no less than five different alleged misrepresentations, four of which were "contained in the Matterport webpages, marketing materials and sales representatives' scripts" (Br. 4–6).  Potential class members could thus have been exposed to any combination of those five misrepresentations at different (and even multiple) points in their chain of decisions that eventually led them to make their first of many, differing expenditures to become an MSP.

Plaintiff deals with the above simply by arguing that "[c]lass members necessarily would have been exposed to Matterport's uniform misrepresentations on Matterport's MSP program webpages" (Br. 12–14).  This order need not rehash the evidence and reasoning addressing this identical argument from plaintiff.  Our *Stemmelin* order already explained that one "could not buy a camera on the MSP program pages," which is significant because "although all MSPs were exposed to the alleged misrepresentations on Matterport's website when they completed their MSP applications, that does not mean they were necessarily exposed to any misstatements before . . . the foundation for economic injury here."  *Stemmelin*, 2022 WL 783206, at *6. Again, plaintiff's new definition *expands* the foundation for economic injury to include *any* expenses related to an MSP business.  Suffice to say, "Matterport did advertise the MSP program beyond its website.  It distributed leaflets at trade shows, created circulars, and had sales representatives give presentations about the program to prospective partners . . . . However, not even all the MSP program advertisements contained the alleged misrepresentations or induced consumers to join."  *Ibid.*  This means that Matterport's alleged misrepresentations were not "uniform," and that class members would not "necessarily" have been exposed to—let alone relied on—the alleged misrepresentations via the MSP website. Case in point, our plaintiff himself cites "hearing the misrepresentations from Matterport sales representatives" in his complaint as part of why he purchased a camera to become an MSP (Second Amd. Compl. ¶¶ 83–85).

In sum, the potential exposure to all five misrepresentations on the MSP website does nothing to establish common questions and answers of *reliance*, which is the key inquiry.  And because the crucial reliance inquiry here is relatively individualized, common questions do not predominate.

There cannot be a presumption of reliance for absent class members where "it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant."  *Walker*, 953 F.3d at 631. So too here.  Even if Matterport was found liable for any one of those alleged misrepresentations, that would not provide a common answer to the class as to whether that is

United States District Court
Northern District of California

what motivated a class member to become an MSP.  After the benefit of two years litigating this theory in *Stemmelin* with full discovery, plaintiff remains unable to articulate a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Cf. Wal-Mart Stores, Inc.*, 564 U.S. at 350.

### (2) Rule 23(b)(3) Class for Implied Covenant Claim

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement."  *Carson v. Mercury Ins. Co.*, 148 Cal. Rptr. 3d 518, 534 (Cal. Ct. App. 2012).  The elements of a violation of the implied covenant of good faith and fair dealing are:

> (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (Judge Maria-Elena James).  Harm is thus an element to be proven, and again plaintiff makes no showing as to how this revised definition solves the fatal flaws identified in *Stemmelin*:

> Nevertheless, determining whether harm actually resulted from Matterport's unfair interference with the MSP agreement necessitates individualized inquiries.  The proposed classes include, for example, real estate brokers who do not offer scan services directly (Fong Decl. ¶ 17).  These types of class members could not demonstrate harm.  Moreover, leads that Matterport passed on to MSPs were not uniform, but were typically concentrated in specific geographic areas (Dowdle Decl. ¶ 5).  This means some class members may not be harmed at all because there were no leads for Matterport to cannibalize in the first place.  These individualized inquiries into the good faith and fair dealing covenant predominate over issues capable of classwide resolution. . . . Moreover, Stemmelin's liability case is untethered from his damages theory.

2022 WL 783206, at *9.

"If the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance."  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730

United States District Court
Northern District of California

7

(9th Cir. 2020) (quoting *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016)).  Plaintiff relies on the same theory of liability as in *Stemmelin*, arguing that "whether real estate brokers claim they were not interested in using leads or whether leads were not available in a MSP's geographical market, does not change the fact that Matterport promised pre-qualified leads and failed to provide those leads" (Reply 12).  Plaintiff does not explain how the revised class definition whittles out MSPs that enrolled in the MSP program, but would never have received leads from the MSP program regardless, such as those who live in areas where there are simply no leads.  *See infra* Section 1.C.  And, again, "[r]ecission of the MSP terms of service would not entitle the class member to the purchase price of their Matterport camera, which is how Plaintiff's damages expert would compute damages." *Stemmelin*, 2022 WL 783206, at *10.  Plaintiff does not address this point at all, and thus fails his burden of demonstrating predominance of common questions of law and fact as to the claim for breach of the implied covenant of good faith and fair dealing.  Certification of a Rule 23(b)(3) damages class is **DENIED**.

### C.    Typicality and Adequacy.

The individualized inquiries highlighted in the foregoing likewise undermine plaintiff's assertions that his claims and defenses are typical of the class, and that he is an adequate representative for the putative class.  FRCP 23(a)(3); FRCP 23(a)(4).  Under Rule 23, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Class certification is inappropriate, however, if a putative class representative is subject to "unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).  Adequacy under Rule 23(a)(4) is satisfied only if "the representative parties will fairly and adequately protect the interests of the class."  The two key inquiries for adequacy are: (1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  Unique defenses can go to either typicality or adequacy.  *See, e.g.*, *Backus v. ConAgra Foods, Inc.*, No. C 16-00454

WHA, 2016 WL 7406505, at *5 (N.D. Cal. Dec. 22, 2016); *see also Hanon*, 976 F.2d at 508 ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.").

Similarly, an injunctive class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." At core, for an injunctive class, "[w]hat is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." *Parsons v. Ryan*, 754 F.3d 657, 688 n.33 (9th Cir. 2014) (quoting 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1775 (3d ed. 2014)).

Our plaintiff Shawn Lynch is a vendor of relative sophistication. He had an active business using the scanning cameras, providing services "in Virginia, Maryland, the Washington D.C. area, New York, New Jersey, and Connecticut" (Second Amd. Compl. ¶ 91). Plaintiff Lynch lost a major client Cushman & Wakefield—which had not been acquired as an MSP program lead, but rather independently of the MSP program altogether—to Matterport's Capture Services program (Second Amd. Compl. ¶¶ 93–94). Recall that the class definition purports to capture anyone who made any expenditure *in reliance on* Matterport's alleged misrepresentations for what the MSP program offers. This would include someone who has never been in the business of providing scanning services, had no clients to begin with, and may not even wish to use the MSP program to start a scanning business—"for example, real estate brokers who do not offer scan services directly (Fong Decl. ¶ 17)." *Stemmelin*, 2022 WL 783206, at *9. In other words, our class representative wants injunctive relief preventing Matterport from improperly competing against his *preexisting* business, while representing potential class members that may want relief allowing them to *start* a business (that may end up competing with plaintiff), or somehow augment an existing, adjacent business. The claims and defenses relevant to competitive harm are qualitatively different between those categories. What's more, "[t]here are 107 MSPs who are also Capture Services Technicians and potentially Rule 23(b)(3) class members" (Reply 5). Plaintiff sidesteps this issue by simply

saying they are excluded from his proposed injunctive class, while continuing to hedge that "the MSP program is more beneficial to the photographer" so "there is no clear evidence that [Capture Services Technicians who are also MSPs] all would be unhappy with the sought after injunctive relief and going back to the MSP program" (*ibid.*). Plaintiff cannot have it both ways.

The requested relief is illustrative. Plaintiff seeks "an injunction against Matterport to (i) prevent Matterport from continuing to operate its Capture Services program and compete against Plaintiff and other MSPs, and (ii) provide leads for scanning jobs to Plaintiff and other MSPs instead of only promoting its Capture Services program" (Br. 21–22). As discussed, plaintiff makes no showing that Matterport's Capture Services program harms putative class members "on a ground that is applicable to the entire class." *Parsons*, 754 F.3d at 688 n.33 (citation omitted). Nor does plaintiff provide insight into how an injunction requiring Matterport to "provide leads" applies to the entire class. The ability for classwide injunctive relief is belied by plaintiff's own oversimplified (and thus nonsensical) theory of harm:

> Given that Lynch was registered as an MSP in two different geographical locations for leads, he should have received twice as many leads as someone with only one geographical location. For the two different geographical locations that Lynch registered with Matterport, he received approximately 44 leads in an approximately 56 month period (May 2018-January 2023), which equates to less than 1 lead per month.

(Second Amd. Compl. ¶ 89). What would be an appropriate rate for leads? How to account for the non-uniform geographic distribution of leads? *See supra* Section 1.B.(2). And even more basically, what if there are simply no leads for Matterport to forward? While the viability of individual claims for relief may vary, ultimately an injunctive class is only proper where "relief from a single practice is requested by all class members." *Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2010). Because that is lacking as to both claims here, certification of a Rule 23(b)(2) injunctive class is **DENIED**.

1

2. **ISSUE CLASS.**

2          Plaintiff also submits a non-exclusive list of ten issues he would like certified pursuant to

3     Rule 23(c)(4) (Br. 25):

4                    a. Whether Matterport misrepresented that the 3D camera is easy
                     to use or it is easy to learn and perform 3D scanning;
5

6                    b. Whether Matterport misrepresented that Matterport would
                     provide the training materials MSPs need to learn to operate the
                     3D camera and perform 3D scans;
7

8                    c. Whether Matterport misrepresented that the MSP program is a
                     lucrative business opportunity or that MSPs will recoup their initial
                     investment within a matter of months;
9

10                   d. Whether Matterport misrepresented that Matterport would
                     provide MSPs with prequalified leads from individuals or
                     businesses;
11

12                   e. Whether Matterport misrepresented that Matterport would
                     provide the tools and resources to ensure the success of an MSP's
13                   business;

14                   f. Whether Matterport sold 3D cameras directly to individuals or
                     businesses;
15

16                   g. Whether Matterport developed a program wherein Matterport
                     refers prospective customers to Capture Services technicians for
                     scanning services;
17

18                   h. Whether Defendants engaged in fraudulent, unfair or unlawful
                     business practices, or unfair, deceptive, untrue or misleading
                     advertising, in violation of California's Unfair Competition Law;
19

20                   i. Whether Defendants breached the implied covenant of good faith
                     and fair dealing; and
21

22                   j. Whether MSPs who perform the scans are the owners of their
                     scanned images, or whether the scans are the property of
                     Matterport.
23          "Our court of appeals has found that even if common questions do not predominate, the

24    district court in appropriate cases may isolate the common issues under FRCP 23(c)(4)[] and

25    proceed with class treatment of those particular issues." *Hernandez v. Wells Fargo Bank, N.A.*,

26    No. C 18-07354 WHA, 2020 WL 469893, at *2 (N.D. Cal. Jan. 29, 2020) (citing *Valentino v.*

27    *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "Under FRCP 23(c)(4), the party

28    must satisfy the requirements of FRCP 23(a), superiority, and demonstrate that certification

would 'materially advance[] the disposition of the litigation as a whole.'" *Ibid.* (quoting *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017)).

The first five issues plaintiff seeks to certify are liability determinations of each of the five asserted misrepresentations. Such determinations would not significantly advance this litigation given the lack of cohesion in the class, as laid out above. Plaintiff himself does not specify which of the five misrepresentations he relied on, so there is no advantage in considering any one alleged misrepresentation in isolation. Likewise, the eight and ninth proposed issues are simply ultimate liability findings on each claim, which as explained suffer from cohesion issues and therefore cannot be adjudicated on a classwide basis. Issue six and seven are factual assertions that defendant Matterport admits: "Matterport in fact sold cameras directly to individuals and businesses . . . . It is also true that Matterport provides 3D scanning services for some customers" (Opp. 25). Those proposed issues are not only moot, but furthermore do not advance the litigation. Finally, plaintiff provides no explanation for the significance or context of the tenth proposed issue, so this order denies certification of that issue because "no such dispute is set forth in the pleading and the need for such relief simply comes out of left field with no anchoring pleadings." *Stemmelin*, 2022 WL 3226973, at *4 (N.D. Cal. Aug. 10, 2022) (denying declaratory relief on same issue on summary judgment).

The saving grace here is that our *Stemmelin* order denying class certification implied that a common issue exists as to the claim for breach of the implied covenant of good faith and fair dealing:

> The flaw in Stemmelin's certification motion discussed previously arises here in the evaluation of class members' alleged harm. Stemmelin explains that the MSP program's terms and conditions "mention that MSPs would be given leads and marketing assistance, and the necessary implication is that Matterport will not directly compete with MSPs for these potential leads, withhold these leads from MSPs, and conceal that conduct from them" (Reply Br. 8). As an initial matter, the MSP terms of service have always contained an express provision disclaiming any representation or warranty as to the number of leads an MSP will be provided (MSP Terms of Service ¶ 7, Fong Decl. Exh. 214; Fong Decl. ¶ 22). *Whether this no-warranties provision circumscribes the good faith covenant presents an issue common to the class. See Carma Developers (Cal.), Inc. v. Marathon Development Cal.*, Inc., 2 Cal. 4th 342, 373 (1992).

*Stemmelin*, 2022 WL 783206, at *9 (emphasis added).  That is, a common defense existed as to plaintiff's theory of harm.  That remains true here.

"The implied covenant of good faith and fair dealing 'rests upon the existence of some specific contractual obligation . . . [and] the implied covenant is limited to ensuring compliance with the express terms in the contract, and cannot be extended to create obligations not contemplated in the contract.'"  *Bilodeau v. McAfee, Inc.*, No. 12-CV-04589-LHK, 2013 WL 3200658, at *13 (N.D. Cal. June 24, 2013) (Judge Lucy H. Koh) (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 14 Cal. Rptr. 2d 335, 339 (Cal. Ct. App. 1992)).  Here, plaintiff's claim is tied to the MSP terms of service and what it offered.  All MSPs necessarily agreed to the MSP terms of service when signing up, and thus whether or not Matterport's Capture Services program was disclaimed by those same terms is an issue common to every MSP, leaving aside whether or not each individual MSP could bring such a claim in the first place.  As such, the foregoing concerns for commonality, typicality, and adequacy of representation are not present regarding this issue.

This order thus defines the following class:  All enrolled MSPs when Matterport launched its Capture Services program.  The following issue is certified for class treatment: Whether or not the MSP terms of service prevent a claim for breach of the implied covenant of good faith and fair dealing based on Matterport's operation of its Capture Services program.  If the legal answer is "yes," then that will be the end of the implied covenant claim for all.  This order thus finds that classwide "adjudication of the certified issue[] would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency."  *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 175–76 (N.D. Cal. 2015) (Judge Joseph C. Spero) (quoting *Valentino*, 97 F.3d at 1234).

13

1

**CONCLUSION**

2      Plaintiff's motion for class certification is **GRANTED IN PART** and **DENIED IN PART**.  A

3 class of all enrolled MSPs when Matterport launched its Capture Services program is

4 **CERTIFIED**, solely to this issue: whether or not the MSP terms of service prevent a claim for

5 breach of the implied covenant of good faith and fair dealing based on Matterport's operation

6 of its Capture Services program.  Plaintiff Shawn Lynch is **APPOINTED** representative of the

7 class.

8

9      **IT IS SO ORDERED.**

10

11 Dated:  August 16, 2023.

12

13 _____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28