UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN LYNCH, on behalf of himself and all other person similarly situated,

    Plaintiff,

v.

MATTERPORT, INC, a Delaware corporation; RJ PITTMAN, DAVE GAUSEBECK, MATT BELL, CARLOS KOKRON, PETER HERBERT, JASON KIKORIAN, and MIKE GUSTAFSON,

    Defendants.

No. 22-cv-03704-WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND AMINISTRATIVE MOTION TO FILE UNDER SEAL**

## INTRODUCTION

In this putative class action, plaintiff seeks leave to file a third amended complaint. For the following reasons, the motion is **DENIED**. Plaintiff's administrative motion to seal has also been **DENIED**.

## STATEMENT

Our prior order presented the underlying facts in greater detail as well as the similarity of this action to a prior action before the same judge, *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA (*see* Dkt. No. 34). In sum, defendant Matterport, Inc. markets and sells 3D cameras that can be used to create 3D models of real-world spaces. Matterport offers related

services such as software for 3D image manipulation and cloud storage. Importantly, Matterport also developed the Matterport Service Partner (MSP) program. This program incentivized 3D camera purchases by helping purchasers start their own businesses selling 3D scans captured with these cameras. While enrollment in the program itself was free, eligibility for enrollment was premised on owning a Matterport camera and having a subscription for Matterport software and cloud storage.

Shawn Lynch alleged that Matterport's marketing of its free MSP program was deceptive. After making financial investments to be eligible for (and then enrolling in) the MSP program, he saw few of the benefits that had incentivized him to join. Furthermore, Lynch alleged that Matterport also launched another program, Matterport Capture Services, which competed directly with MSPs and further hindered his MSP business by taking away his clients. Lynch purchased a Matterport 3D camera and corresponding cloud storage subscription in March 2018, and became an MSP a month later in April 2018 (Second Amd. Compl. ¶¶ 82–86).

Lynch sought class certification, which was granted by a previous order only as to whether the MSP terms of service prevent a claim for breach of implied covenant of good faith and fair dealing based on Matterport's of its Capture Services Program; "[i]f the legal answer is 'yes,' then that will be the end of the implied covenant claim for all" (Dkt. No. 84 at 13).

Defendant subsequently moved for summary judgment with respect to Lynch's individual claims. An order found that those claims had previously been litigated in *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2022 WL 3226973, at *1 (N.D. Cal. Aug. 10, 2022), and therefore granted defendant's motion (Dkt. No. 101).

With respect to the implied covenant claim, the order found that Lynch's business, I.C. Progress Inc., is the proper plaintiff and not Lynch in his individual capacity. Moreover, the order noted that under California law, the covenant of good faith and fair dealing cannot be

2

construed to add an affirmative duty not to compete for the same customers, given the "basic principles relevant to contract law . . . that, with the exception of insurance contracts, '[b]ecause the covenant is a contract term . . . compensation for its breach has almost always been limited to contract rather than tort remedies.'" *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 674–75, 679–80 (Cal. 1995); *see* Cal. Civ. Code § 3423(e). The order found that Lynch had not shown that such a duty existed and therefore could not be imposed and incorporated into the contract. As such, summary judgment was granted for defendant (Dkt. No. 101).

The order stated, however, that counsel may seek leave to amend the pleadings to reflect the proper plaintiff, with two additional caveats. *First*, counsel were required to explain how such amendments would cure the central issues on the merits. *Second*, counsel were required to provide a sworn statement that I.C. Progress is a corporation in good standing now and in the past under the laws of New York (Dkt. No. 101). Counsel for plaintiff subsequently sought leave to amend the pleadings for a third time. This order follows full briefing and oral argument.

**ANALYSIS**

Our court of appeals has explained Rule 15's instruction that "leave [to amend] shall be freely given when justice so requires" is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Nevertheless, "[a] motion to amend is addressed to the sound discretion of the court, and must be decided upon the facts and circumstances of each particular case." *Sackett v. Beaman*, 399 F.2d 884, 889 (9th Cir. 1968) (citing *Caddy-Imler Creations, Inc. v. Caddy*, 299 F.2d 79, 84 (9th Cir. 1962)). In doing so, courts consider the following factors:

3

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Ibid.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Those factors are not weighed equally however, as "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Aspeon, Inc.*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)).

### 1. CURATIVE AMENDMENT TO THE PLEADINGS

Defendant argued during the hearing for the motion for summary judgment, and again in its opposition to the instant motion, that plaintiff has not shown how this amendment will cure any flaws on the merits (Dkt. No. 108 at 3). During the hearing for motion for summary judgment, the judge also articulated skepticism that under California law, the covenant of good faith and fair dealing can be construed to add an affirmative duty to not compete for the same customers, given the "basic principles relevant to contract law . . . that, with the exception of insurance contracts, '[b]ecause the covenant is a contract term . . . compensation for its breach has almost always been limited to contract rather than tort remedies.'" *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 674–75, 679–80 (Cal. 1995); *see* Cal. Civ. Code § 3423(e).

In the absence of a duty, the judge informed plaintiff that a covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *See* Dkt. No. 101; *Avidity Partners, LLC v. State*, 165 Cal.Rptr.3d 299, 320 (Cal. Ct. App. 2013) (citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend. If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (internal quotation and citations omitted).

With the benefit of this context, plaintiff must now demonstrate that defendant owes it a duty not to compete.

### A. There is No Implied Covenant Not to Compete.

The gravamen of plaintiff's grievance is that defendant competes for the same customers as plaintiff. But competition is the American way. Collusion is not, and in fact would violate the Sherman Act. So, we should be slow, very slow, to read collusive terms into a contract.

Plaintiff tries to use the implied covenant of good faith and fair dealing to insert such collusion into the contract into question (which otherwise has no such clause). Plaintiff points to written representations by defendant; most notably, defendant stated on its website: "[w]e match Matterport Service Partners on local proximity to leads who come in requesting a scan service" (Third Amd. Compl. ¶ 52). Moreover, plaintiff cites the following language: "Matterport Service Partner program provides powerful tools and resources to ensure the success of your business" (*id*. at ¶ 60). These snippets are too scant to support an implied covenant not to compete.

Plaintiff mainly relies on an order from the Central District, *Neurobrands, LLC v. Am. Bottling Co*., 2022 WL 17219991, at *1 (Feb. 25, 2022) (Judge Fernando Aenlle-Rocha), where the defendant, a distributor, entered into a contract with the plaintiff drink-manufacturer, to exclusively and "vigorously, diligently, loyally, and faithfully, on a continuous basis, promote the sale and distribution." That defendant subsequently failed to promote or maintain sufficient shelf-space for plaintiff's products so that it could compete directly with the plaintiff and sell its own brands into Kroger shelf-space occupied by the plaintiff. *Id*. at *5. There, the court held that these allegations were sufficient to state a claim for breach of contract due the defendant's inaction. *Id*. at *4.

*Neurobrands* is distinguishable from the instant matter because, because that court's finding that that plaintiff had alleged a breach of implied covenant of good faith was based on that defendant's failure to carry out its express contractual responsibilities. *Neurobrands,* 2022 WL 17219991 at *5 ("The required lack of good faith is shown when the defendant's failure to carry out its contractual responsibilities was prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act. . .") (citations omitted.) As previously stated, the implied covenant of good faith and fair dealing cannot impose additional, substantive contractual terms to a contract in the absence of a contractual duty. *Avidity Partners, LLC*, 165 Cal.Rptr.3d at 320.

On the contrary, Matterport states in the program's terms and conditions that helping plaintiff or any other MSP is discretionary; it "*may from time to time* provide leads and/or marketing assistance to Partners" (Exh. 214 ¶ 1) (emphasis added). This sentiment is echoed throughout its terms: "in Matterport's sole discretion, Matterport may" provide program benefits such as referring customer leads, and marketing assistance (*id*. at ¶ 3(a)). Additionally, it "is not obligated to promote business of any Partner and reserves the right to withhold such promotion in Matterport's sole discretion" (*ibid*.). Therefore, aside from providing occasional leads and perhaps providing assistance in marketing, defendant has undertaken no additional contractual obligations with respect to plaintiff or other MSPs. There is no implied covenant to not compete.

In its reply brief, plaintiff concedes that defendant did not promise a specific number of leads, but now contends that the MSP terms cannot reasonably interpreted to mean that Matterport would provide no leads, as was the case for plaintiff in 2022 (Dkt. No. 112 at 7). Plaintiff, however, conceded that he received 44 leads. He just did not receive any in 2022 (Third Amd. Comp. ¶ 84). There is nothing in the MSP propaganda specifying that leads would be provided every year. To be clear, Matterport expressly states in its terms that it

6

"does not represent or warrant (a) that the program will meet your needs or requirements . . . or (c) the number of leads that the program will generate for your business" (Exh. 214 ¶ 7). This new argument raised in the reply brief is not enough to save the day.

### B. There is No Cognizable Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

In the third amended complaint, plaintiff alleges that it lost one of its regular clients, Cushman & Wakefield "as a direct result of Matterport competing against it with its Capture Services program" (Third Amd. Compl. ¶ 89). Cushman & Wakefield was not acquired "via a 'lead' from Matterport" and went straight to plaintiff instead in 2020 (*id.* at ¶ 88). In 2022, Cushman & Wakefield "notified" plaintiff that they had signed up with Matterport Capture Services and "would no longer need [its] services" (*id.* at ¶ 89).

To withstand a motion to dismiss as a matter of law, a complaint must allege sufficient factual matter to state a facially plausible claim for relief. In reviewing allegations to determine whether a plaintiff has plausibly alleged a claim for relief, the court is authorized to disregard legal conclusions. Further, a court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

Defendant was perfectly free to compete for Cushman & Wakefield. Nothing in the contract prohibited it from doing so. This order finds that plaintiff's amendments to its complaint are futile and do not address the cure the core issues on the merits.

### 2. I.C. PROGRESS'S STANDING.

In a previous order granting defendant's motion to dismiss, it became clear that I.C. Progress is the appropriate plaintiff with respect to the implied covenant claim, not Lynch in his individual capacity (Dkt. No. 101). To this end, counsel were required to establish that

7

I.C. Progress has standing in this matter and has been in good standing under the laws of New York. Lynch stated in a declaration that I.C. Progress has been in good standing in New York since its creation in 2013 (Dkt. No. 104).

### 3. ADMINISTRATIVE MOTION TO FILE UNDER SEAL

Plaintiff moves the court to consider whether the expert report of Brian Ellman should be sealed. For the reasons that follow, the administrative motion to file under seal is **DENIED**.

The public has "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "This right is justified by the interest of citizens in keeping a watchful eye on the workings of public agencies." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).

"Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point. A party seeking a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard. That is, the party must articulate compelling reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process. In turn, the court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1178–79 (cleaned up).

"What constitutes a compelling reason is best left to the sound discretion of the trial court. Examples include when a court record might be used to gratify private spite or promote public scandal, to circulate libelous statements, or as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citations omitted).

Under our local rules, requests to seal "must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." Civ. L.R. 79-5(b). "A party must explore all reasonable alternatives to filing documents under seal . . . and avoid wherever

1   possible sealing entire documents (as opposed to merely redacting the truly sensitive

2   information in a document)." Civil L.R. 79-5(a). "Reference to a stipulation or protective

3   order that allows a party to designate certain documents as confidential is not sufficient to

4   establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(c).

5       Plaintiff's motion does not specifically identify the information in the document that

6   warrants sealing; in fact, counsel for plaintiff's declaration states that he has no personal

7   knowledge as to why the report as been designated as confidential (Dkt. No. 111-1 ¶ 4). Nor

8   has counsel for defense provided a reason for why the report warrants sealing. Thus, the

9   requested sealing is wildly overbroad, not narrowly tailored, and is deniable on that ground

10  alone.

## CONCLUSION

For the aforementioned reasons, plaintiff's motion for leave to file a third amended complaint is **DENIED**. Plaintiff's administrative motion to seal has also been **DENIED**. Judgment will be entered for defendant.

**IT IS SO ORDERED.**

Dated: February 2, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE